SARTAIN, Judge.
This is an expropriation proceeding wherein plaintiff seeks to obtain 25.363 acres of a 215 acre dairy farm for the construction of State Project No. 452-02-39, Interstate Highway 55, from defendant landowner, Kemble K. Kennedy.
The plaintiff deposited in the registiy of court a total of $6508.00 compensation for the value of the land taken, fences destroyed, and severance damage for isolation of a 10.96 acre tract, all of which was withdrawn by defendant. The issues on trial involved only the evaluation of compensation due defendant for the expropriation.
Defendant has for some time prior to this expropriation operated a highly improved dairy farm consisting of approximately 215 acres. And all appraisers agree that the best use of the property both prior to the taking and at the time of trial is for dairy farming. The property actually taken for the highway right of way amounts to something in excess of 25 'acres, running generally north and south inside the western border of defendant’s property. After the taking, some 10.96 acres of defendant’s property was isolated on the western side of the proposed Interstate highway leaving defendant with a dairy operation of approximately 178 acres on the eastern side of the highway. Running through this dairy farm in a generally east-west direction and now crossing the highway is Beaver Creek. This creek is somewhat erratic in the amount of water carried during the year, being low most of the time but full and high after heavy rainfalls. It is conceded that this creek has always presented an erosion problem.
Before trial defendant sold the 10.96 acres isolated on the western side of the highway right of way to T. L. James & Company for a price of $2877.50, or about $250.00 per acre, for use as burrow pits.
Plaintiff placed three witnesses on the stand at trial — Lee Mapes, who qualified as an expert project engineer and civil engineer on this interstate highway; Edward Deano and Max Derbes, Jr. both of whom qualified as expert real estate appraisers. Defendant offered four witnesses, of which three testified at trial. Those three were the defendant himself, Roy Mitchell, who qualified as an agricultural and dairy farming expert, and Spec McClendon, who qualified as an expert real estate appraiser. The fourth witness, one *851 Harry Starnes, was unable to testify; hence, counsels for plaintiff and defendant agreed that his testimony would be substantially the same as Mr. McClendon.
Mr. Mapes testified that most of the right of way property formerly belonging to defendant had to be cleared for building the highway. He stated that because of Beaver Creek’s tendency at times to flood and run off rapidly, the creek was straightened and widened from 30' to 80' as it crossed the right of way in order to localize its flow and permit its effective bridging. He testified that the creek’s sandy banks have made it susceptible to erosion, but that while this work on the creek might possibly increase erosion, he could not state that it has or will have done so with respect to defendant’s property.
Mr. Deano valued the property taken at $200.00 per acre, or a total of $5,357.00. In arriving at this value, he used four comparable sales. The first was a 130 acre tract, sold on May 12, 1961, from one Coney to one Ballard for the price of $100.00 per acre. This 130 acres lay about 2i/¿ miles southwest of defendant’s property, west of the Illinois Central Railroad right of way, and thought to be not as well located as the Kennedy property. The second comparable was also sold for $100.00 per acre, was also a 130 acres, was also sold on May 12, 1961, by one Coney, this time to one Hendry. This property was described as being similar to the first comparable. The third comparable was a sale on May 23, 1962, of 82.-97 acres at $163.00 per acre from one Sevier to one Miller. This property lay west of Kentwood, Louisiana, but was described as being not as well located as defendant’s land. The fourth comparable was a sale from one Kent to one Newsom on July 25, 1962, of 65 acres at $200.00 per acre. Stating this sale as his best comparable, Mr. Deano described this land as being as good as the property taken from defendant and only mile south of the Kennedy tract. Mr. Deano testified that the land taken was not as good as the rest of the farm, that it was mostly wooded and in poorer condition. Being so, Mr. Deano concluded that there was no severance damage to the eastern 178 acre farm, since the land taken was very poor pasture at best and its taking did not diminish defendant’s actual dairy operation. He stated that sales of large dairy farms were few in number.
Mr. Derbes valued the land taken at $4,936.00. In arriving at this figure, he divided the land into pastureland and woodland. He placed a value of $300.00 per acre on the 12 acres of pastureland taken and $100.00 per acre on the remaining 13 plus acres of woodland. Mr. Derbes used four comparables. The first and second comparable sales were the Coney-Ballard sale and the Kent-Newsom sale, both of which were also used by Mr. Deano, supra. The third comparable was a sale from one Dakin to one Miller on February 18, 1963, of 40 acres of improved pasture at $175.00 per acre. Mr. Derbes testified that this land was not as good as defendant’s pastureland portion, but that it was better than defendant’s wooded area. The fourth comparable was a sale from one Davis to one Newsom on April 3, 1963, of 49 acres at $236.00 per acre. Mr. Derbes stated that this land is located on the southwest side of Tangipahoa, Louisiana, not far from defendant’s property, that its fields are in poorer condition but that it was sold with the improvement of a large white house located thereon. Mr. Derbes further testified that comparable sales in the area indicate no difference in per acre market value caused by the different overall sizes of farms, that a more important cause for a difference in per acre market value is the operational efficiency of a farm. He admits that Mr. Kennedy operates with the highest efficiency and that some timber is beneficial to cattle operations. He testified that he allowed no severance damage to the 178 acres because all this acreage 'is good pastureland and prior to the taking, only 180 acres or so were observed actually to be in use for grazing. From this ob *852 servation, he drew the conclusion that defendant has actually lost no substantial operational efficiency because of the farm’s overall size reduction caused by the expropriation. He placed a value of $220.00 as damages done to defendant’s fencing.
The defendant testified that prior to the taking he had used from 175 to 180 acres as prime pastureland but that he also used all of his land. He stated that only recently before trial he had cleared about 6 more acres of his land at the cost of $77.66 per acre for pasture. While Mr. Derbes testified that he had observed defendant running about 114 head of cattle and milking about 75, defendant stated that he had 132 head of cattle before the taking, but had to sell 15 prior to trial because of his inability to feed them. He stated that he was milking only 61 cows because of the drought and lack of land. Defendant testified that while the land isolated from him was not improved, it was to some degree cleared and useful in a drought situation. Because of the 11 acres being inaccessible, however, he sold it to T. L. James & Company.
Mr. Roy Mitchell testified that dairy farms in the area were getting larger and that smaller operations were being eliminated and in his opinion a reduction in the overall size of this dairy farm from 215 acres to 178 would decrease the farm’s per acre value, though, not being a real estate expert, he could not state how much the decrease would be. He admitted that forty to fifty per cent of the dairy farms in Tangipahoa Parish were smaller than 178 acres.
Mr. McClendon testified that the value of the land taken, in his opinion, was $500.-00 per acre, or $12,681.50. He used four comparables. The first was a sale from one Walker to one Westmoreland on April 2, 1962, at $490.00 per acre of 120 acres including all immovables and equipment thereon. Excluding the value of the movables, he adjusted the price downward to $382.00 per acre. However, this price still included the immovables, one of which was a swimming pool. He stated that the improvements were too great for this small acreage. Being over-improved and not generally so good a land as defendant’s, he adjusted the price upwards again. This property was a dairy farm located only 1^4 miles from defendant’s property, at the edge of town, and fronted U.S. Highway 51. His second comparable was a sale from one Waller to one Bridges on January 3, 1963, of 60 acres at $250.00 per acre. He stated that this land was hilly, not so good as defendant’s flat pastureland, and the improvements much less valuable. The third comparable was the Davis-Newsom sale used by Mr. Derbes, supra, and Mr. McClendon thought this land to be not nearly so good as defendant’s. He described that land as not having been fertilized or renovated, but grown up in weeds, with fences and a tenant shack falling down, and an old Civil War type dwelling thereon. His fourth comparable was a sale from one Jordon to one Wall on December 7, 1960, of 66.96 acres at $225.00 per acre. Again Mr. Mc-Clendon stated that this land was much poorer than defendant’s. In adjusting these comparable prices upwards to the value of defendant’s land, Mr. McClendon did not make clear what methods he was using. He further stated that in his opinion there was severance damage to the 178 acres in the amount of $20,000.00. Mr. McClendon apparently took a percentage ratio of the land lost by the expropriation to the total farm prior to the taking and set that value difference off from the straight per acre value of the 178 acres remaining as farm land. This severance damage would be in keeping with his opinion that 200 acres are necessary to operate a profitable dairy farm. He further testified that in his opinion the demand for large farms was great in the area and that buyers did not consider farms of less than 200 acres.
The district court rendered judgment decreeing that the market value of the property and property rights expropriated was $6,692.50, that Mr. McClendon be paid $225.00 in expert fees, and that plaintiff *853 pay the costs of the proceedings. The value of the property and property rights taken include damage to defendant’s fence. Hence, the district court awarded defendant $250.00 per acre for the land taken and no severance or erosion damages to the remaining 178 acres. From this judgment ■defendant appeals and asks that the value of the property taken be increased to $500.00 per acre, that damages of $1200.00 he awarded for 3 acres of defendant’s property injured by erosion, and that $120.00 per acre severance damages to defendant’s 178 acres be decreed. Plaintiff contends that the decision of the district court is accurate, fair, equitable, and certainly not manifestly erroneous. With plaintiff’s contention we agree.
The laws involved in expropriation proceedings are for the most part well settled. It is settled jurisprudence in this state that in an expropriation proceeding the landowner is entitled to compensation equivalent to the market value of the property condemned, market value being the price paid as between a willing and informed buyer and a willing and informed seller in the ordinary course of business. Market value must be determined according to the best and highest use thereof provided it be established that a market for its best and highest use be shown with reasonable certainty and that its possible sale for such best and highest use be not shown to be so remote or problematical as to be speculative in nature. And although there are other indicia of market value the best evidence thereof is sales of similar properties commonly referred to as comparables. Furthermore, when property is expropriated for highway purposes the owner who claims the value thereof exceeds the estimate of its value made by the Department of Highways and deposited in the registry of the court upon institution of the expropriation proceeding, bears the burden of proving his claim and must establish by convincing evidence that its value is greater than the appraisal of the expropriating agency. LSA-R.S. 48:453. State of Louisiana, Through the Department of Highways v. Kemp et al., La.App., 141 So.2d 487.
As established by the jurisprudence of this state concerning expropriation proceedings, the testimony of each qualified expert in the determination of market value of expropriated property is to be given effect if and when it appears well grounded from the standpoint of sincerity and good reasoning. But where the expert’s opinion is not predicated upon sound reasoning, such as, the consideration of comparables which are not in fact similar or located in the vicinity of the expropriated property, or the consideration of a land use speculative and conjectural in nature, or the failure to take other factors and circumstances into consideration, the general rule above stated does not apply and effect will be given only to the opinions of those experts whose testimony is grounded on the best reasoning. Greater Baton Rouge Consolidated Sewer District v. Nelson, La.App., 144 So.2d 186. And where the experts differ as to the valuation of land the trial judge is in a better position to determine their credibility and the weight to be accorded their testimony than is the appellate court and, unless manifest error is shown, his decision should not be disturbed on appeal. Central Louisiana Electric Company v. Williams, La.App., 181 So.2d 844.
The value of the land taken was set by Mr. Deano at $5357.00, by Mr. Der-bes at $4936.00, and by Mr. McClendon at $12,681.50. The trial judge did not give weight to the adjustments by Mr. McClen-don to his comparables because Mr. Mc-Clendon did not exclude the value of various immovable improvements in the com-parables and did not fully explain sufficiently the basis on which he arrived at this $12,681.50 figure. Yet, in reviewing the evidence given at trial, the district court had to have given substantial weight to the comparables offered by Mr. Mc-Clendon in order to conclude, as the court *854 did, that those comparables most pertinent, with necessary adjustments, reflect an overall acreage price ranging between $175.00 to $275.00. In trying to be as fair as possible to both parties and in giving equal weight to all the clear, explained, and credible evidence before him, the trial judge awarded $6,407.50 as compensation for the land itself taken. And in light of all the evidence we can find no manifest error nor abuse of discretion in this award.
It is well settled that in an expropriation proceeding the landowner is also entitled to damages to the land remaining. These damages, called severance damages, are to be measured by taking the difference between the market value of the property remaining before the taking and the market value of the property remaining after the taking. Furthermore, mere consequential damages to owner from discomfort, disturbance, or injury to business are not redressible. And at any rate, consequential or severance damages claimed by the landowner must not be anticipated damages, or too remote and speculative. Parish of Lafayette Through the Police Jury of Lafayette Parish v. Hernandez, 232 La. 1, 93 So.2d 672.
The district court allowed no severance damages to the remaining 178 acres. There is evidence that the reduction of the dairy farm from 215 acres to 178 acres decreased the per acre market value of the property; however, this evidence is not definitive. Mr. Mitchell, who is not a real estate appraiser, stated that a reduction in the overall size would decrease the farm’s per acre market value, but he could not say to what extent. Mr. McClendon also adhered to this belief and arrived at $20,000.00 severance damages by a formula not shown to be effective or even pertinent to land market values. On the other hand, Mr. Derbes stated that defendant has about as much pastureland now as he actually used prior to the taking, that the per acre market value of the dairy farm depended upon its operational efficiency, and that the expropriation has; not really caused an operational deficiency. It is true that defendant was suffering from' drought at the time of trial, but that trouble-was not caused by the expropriation. Both' Mr. Derbes and Mr. Mitchell agreed that there were many dairy farms in the vicinity with less than 178 acres. Both Mr.. Derbes and Mr. Deano opined that there-was no severance damage to the 178 acres, remaining. Hence, the evidence amply supports the thoroughly reasonable conclusion by the district court that in this-particular case there were no severance-damages to the remaining 178 acres of! dairy farm.
The judgment allowed no damages; for erosion. The district judge based this, decision on two grounds: The first is that erosion damage was not pleaded; the second is that defendant has not carried his; burden of proof as to this damage. Defendant in his brief attacks the first ground' with Louisiana Code of Civil Procedure Article 1154. Even assuming that this issue was pleaded, the district court was not manifestly erroneous in holding that this-damage was not affirmatively and definitively established. Defendant here must-not only prove the erosion damage, which-was admittedly a problem long before the-straightening and widening of Beaver-Creek; he must also prove that plaintiff’s, workings caused the excessive erosion-, damage.
The only testimony as to this; proof is Mr. Derbes’ lay opinion that widening the creek with this channel would increase erosion to defendant’s land but that it was speculative and he could place no-damage value to it. “To guess real wildly,” he said he would estimate that it would1 be probably 3 acres of defendant’s property “that are going to be affected.” In addition, the defendant gave his lay opinion-; that something must give when “you put a bunch of water through a small hole."' However, defendant admitted that everyone on Beaver Creek has an erosion prob *855 lem. The lack of evidence in the record that the plaintiff’s workings on the creek has caused excessive erosion to defendant’s property and the speculative nature of the evidence that is in the record on this subject supports the district court’s decision .to award no erosion damages.
In reviewing all the evidence in the rec-ord and giving equal weight to all the reasonable opinions and conclusions of the .experts in their respective fields, it appears that the district judge has kept within the '.bounds of law and, moreover, has been very fair and equitable in arriving at his decision.
For the foregoing reasons, it is ordered, ■adjudged and decreed that the judgment of the district court below be affirmed in all respects and that the costs of this appeal be assessed against the defendant appellant.
Affirmed.