520 So.2d 1242 (1988)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Richard L. KELLER, et al.
No. 87-CA-525.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
Leon C. Vial, III, Julie Burke, Hahnville, for defendants-appellees.
Frederick J. Fuselier, Office of General Counsel, Baton Rouge, for plaintiff-appellant.
Before CHEHARDY, GRISBAUM and WICKER, JJ.
WICKER, Judge.
The State of Louisiana appeals a judgment awarding $132,340.00 plus witness and attorney's fees to the defendants, Richard L. Keller, Richard J. Keller, Dorothy Ross Keller Lirette, Charles A. Vial, Hubert J. Keller, Elvire T. Keller Gravois, Lester J. Vial, Isma Barbara Lanoue Keller, Isma Barbara Keller Moak, John Lanoue Keller, and Theodore P. Keller (the Kellers), all co-owners of land which the State expropriated under the quick taking statute (L.S.A.-R.S. 48:441 et seq.). The issues are the proper standard of valuation of the land and the award of attorney's fees. We affirm in part and reverse in part.
The Kellers are owners of Homeplace Plantation in St. Charles Parish, which consists of agricultural lands with an antebellum plantation house, wetlands, and batture, comprising over five hundred acres. In order to obtain the land for a pending highway project, the State filed suit on April 11, 1974, to expropriate two contiguous tracts of this land, 9.32 acres of wetlands (Parcel 4-1) and 22.7 acres of high land (Parcel 5.2), reserving any mineral rights and highway access to the Kellers. The State deposited $99,455.00 as estimated compensation into the registry of the court. The judge signed the order of expropriation, and the funds on deposit were withdrawn by the Kellers. The case was set for trial twelve times (it was continued at the request of one party or another nine times) before it finally came to trial in December of 1986. Richard Keller and three appraisers testified.
The Keller's appraiser, J. Bradley Oubre, presented a range of fifteen comparables, adjusting as needed for differences in location, date of sale, size, proximity to development and infrastructure, and like factors. The comparable sales ranged in unit price from $9,500 to $2,650 per acre. *1243 He found the highest and best use to be residential because of the numerous subdivisions being started in the area, and he noted that industrial potential was limited by the lack of a deep draft capacity along the riverfront. He stated that only the market data approach was appropriate in this case and that the proper measure of loss required comparison among similarlysized parcels of land, since small tracts generally received a higher unit price than large tracts. Many of Oubre's comparables were for smaller tracts of land, and he felt these sales were the most significant. He concluded that Parcel 4-1 should be valued at $2,000 per acre and Parcel 5-2 should be valued at $5,000 per acre, for a total value for the expropriated land of $132,340.00. In his opinion, no additional severance damages were due.
Keller testified that the property's historical use was agriculture, generally cane but also cattle at one point. A lease was in effect at the time of the expropriation.
The State called Peter J. Talluto, who had first appraised the property for the Kellers, as its witness. Talluto used a market data approach as well, but he used as comparables tracts of hundreds of acres to establish a unit value for the Keller's land. In so doing, he calculated the unit value for the entire Homeplace Plantation in its various parts; and then he attributed that unit value to the acreage actually expropriated. He assigned a value of $3,533 per acre to Parcel 5-2 and $750 per acre to 4-1. He did concede that the unit price for small parcels would generally be larger than that for large parcels, and he admitted that he didn't use any parcels the size of the Kellers' in his comparables. He testified that the highest and best use would be commercial in part and residential in part.
Irving Eppling, another appraiser, testified that the highest and best use in the future would be residential but presently it would be agricultural, with no utility assigned to the wetlands. He also noted the lack of deep draft capacity. His comparables were all in excess of three hundred acres, and he valued Parcel 5-2 at $2,865 per acre and Parcel 4-1 at $750 per acre. He testified that the proper measure of value is to take the unit price of the whole tract of land, in this case the five-hundred-acre plantation, and subtract out the expropriated portion. He too admitted that sales of smaller tracts generally bring a higher unit price than sales of larger ones.
The last witness was another appraiser for the State, L.J. Roy, who agreed with Talluto and Eppling that the proper measure of value is to appraise the whole and then to attach a unit value to the part taken. His comparables were all large tracts, although he conceded that smaller tracts would generally have a higher unit value. He assigned a value of $3,000 per acre to Parcel 5-2 and a value of $850 per acre to Parcel 4-1. No attempt was made to analyze the effect of the agricultural leases on the property's value, although Roy did say that this would have been proper.
The judge awarded damages in the amount of $132,340.00 with a credit of $99,455.00. He found "[t]he plaintiff's experts were not as convincing" and that "Mr. Oubre's testimony was more persuasive." He also awarded "maximum attorney's fees of 25% of the judgment. This has been a protracted and complex case, and the circumstances justify the maximum amount."
A landowner whose property is expropriated must be compensated to the full extent of his loss, and he must be "placed in as good a position pecuniarily as [he] enjoyed prior to the taking." State, Department of Highways v. Bitterwolf, 415 So.2d 196, 199 (La.1982) (Citations omitted). Accord: State, Department of Transportation v. Hecker, 493 So.2d 125 (La.App. 5th Cir.1986), writ den. 494 So.2d 325 (1986). The measure of that compensation is generally the market value of the property, according to its highest and best use. State, through Department of Highways v. Kennedy, 193 So.2d 848 (La.App. 1st Cir.1967).
All of the tools of evaluation, including the determination of highest and best use, the study of comparables, cost of structure and depreciation studies, and income analysis, are only means to fixing *1244 just and adequate compensation. No one of these tools is an end in itself.
State, Department of Highways v. Crow, 286 So.2d 353, 356 (La.1973). "The constitution does not limit the courts to one or another method of calculating the value, requiring only that the approach used will result in an amount that fully compensates the landowner for his loss." State, Department of Transportation v. Hecker, supra, at 128. (Citation omitted).
In this case, the appraisal experts differed both in method and result. Oubre's method, valuation of the part taken by the use of comparable sales, has been used and approved by our courts. State, through Department of Highways v. Hoyt, 284 So. 2d 763 (La.1973); State, Department of Highways v. Daigle, 278 So.2d 525 (La. App. 3rd Cir.1973).
The trial judge placed more credence in the testimony of Keller's expert, a concededly well-qualified and experienced appraiser and the only one of the four with a personal connection to St. Charles Parish.
... [W]here the experts differ as to the valuation of land the trial judge is in a better position to determine their credibility and the weight to be accorded their testimony than is the appellate court and, unless manifest error is shown, his decision should not be disturbed on appeal.
State, through Department of Highways v. Kennedy, supra at 853. (Citations omitted). Accord: State, Department of Transportation v. Hecker, supra; State Department of Transp. and Development v. Winn, 463 So.2d 648 (La.App. 4th Cir. 1984). We do not find the trial court's decision with regard to valuation manifestly erroneous and decline to disturb his award.
We nevertheless find his award of attorney's fees to be erroneous. The general rule in Louisiana is that attorney's fees are not allowed as an element of damages unless specifically authorized by statute or contract. Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (La.1958) (on reh. 1959); Maltzahn v. Roch, 427 So.2d 586 (La.App. 5th Cir.1983). The authorization for an award of attorney's fees in expropriation cases became law on January 1, 1975 [L.S.A.-R.S. 48:453(E)]; but this proceeding was begun in April of 1974.[1] The Second Circuit, in a case which was filed prior to the effective date of the statute, held, "... [t]herefore, no constitutional or statutory authority exists for allowing attorney fees in the time frame of this litigation even though it may appear that the initial deposit made by the Department of Highways was grossly inadequate, and caused the landowners the necessity of employing counsel." State, Department of Highways v. Boss, 335 So.2d 700, 704 (La. App.1976). We decline to apply the statute retroactively and reverse the trial court's award of attorney's fees. Each party must bear its own costs.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] Acts 1974, Ex.Sess., No. 30, amending and reenacting Part 18 of Chapter 1 of this title (R.S. 48:441 to R.S. 48:460), provides in Section 3 that the provisions of this Act shall not affect any action, suit, or proceeding filed prior to the effective date of this Act. The effective date is January 1, 1975.