560 So.2d 566 (1990)
STATE of Louisiana Through the DEPARTMENT OF TRANSPORTATION
v.
The ESTATE of Giles DAVIS.
No. 89-CA-730.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 1990.
Writ Granted June 29, 1990.
*567 Jesse S. Guillot, New Orleans, for plaintiff/appellee.
Mark E. Barham, Robert E. Arceneaux, Gail N. Wise, Barham & Associates, Galen S. Brown, Lamothe & Hamilton, New Orleans, Dale Brou, Boutte, for defendants/appellants.
Before CHEHARDY, BOWES and GOTHARD, JJ.
GOTHARD, Judge.
On July 8, 1983 the State of Louisiana, through the Department of Transportation and Development, filed an expropriation suit in St. Charles Parish against the estate of Giles Davis. The suit alleged authorization to appropriate approximately 9.046 acres in connection with State Project number XXX-XX-XX, or the New Orleans Loop Project, on State Route La. I-310. Accordingly, the State took immediate possession of the land and deposited $94,450.00 into the registry of the court pursuant to LSA-R.S. 48:441 et seq.
The owner of record, Giles Davis, is deceased and some of his heirs were living in separate single family dwellings on the subject tract of land but had not undertaken the formalities of opening the succession.
*568 Pursuant to a prayer in the State's petition, an attorney, Steve Griffith, was appointed to represent the estate of Giles Davis. However, on July 21, 1983 Harold J. Sonnier, asserting that he had been employed by the heirs of Giles Davis, filed motions to be recognized as attorney of record for the estate and to withdraw the funds deposited by the State. Both motions were granted by the trial court.
On October 4, 1983 Sonnier filed an answer to the expropriation suit on behalf of his clients asserting that just compensation for the land was $199,464.30. The answer was subsequently amended on April 23, 1984 to assert a market value of $370,900.00. Also on that date one of the heirs, Jo Ann Davis, filed a petition of intervention asserting that she was not represented by Harold Sonnier and had not received her portion of the compensation.
The parties entered into a settlement on September 21, 1984 whereby the State deposited an additional $126,250.00 in the registry of the court. By the terms of that agreement the original defendant, the estate of Giles Davis, and the intervenor, Jo Ann Davis, acknowledged that $220,700.00 was just compensation for the property. They further agreed not to contest the suit and to confirm the acceptance of the $220,700.00 as a final award.
Pursuant to that consent judgment, Harold Sonnier withdrew an additional $115,890.40[1] from the registry of the court. The funds withdrawn by Sonnier were not properly dispersed to the heirs and a separate action was filed against Sonnier. As a result of that action a portion of the money was recovered and returned to the registry of the court.
In the interim, the heirs, now represented by new counsel, opened the successions of Mathilda and Giles Davis and filed suit to annul the consent judgment and reopen the expropriation suit. By judgment rendered on March 5, 1986, the trial court annulled the September 24, 1984 judgment and annulled its September 21, 1984 order allowing Sonnier to withdraw funds. That judgment was affirmed by this court on January 12, 1987 in unpublished opinion 86-CA-380.
The merits of the expropriation case were heard on October 27, 1988 and taken under advisement. On May 8, 1989 the trial court rendered judgment awarding to the heirs the sum of $218,604.00 as just and adequate compensation for expropriation of the property. Judgment was also rendered granting the State of Louisiana credit for all amounts previously deposited and awarding $10,000 in attorney's fees to defendants' attorneys.
The defendants appeal arguing that the trial court erred in seriously undervaluing the expropriated property, in allowing the State credit for amounts previously deposited and in awarding inadequate attorney's fees, in failing to include an award of legal interest and in failing to award expert witness fees. The State has answered the appeal asserting the award of attorney's fees was in error.
The State is obliged to fully compensate a landowner whose property has been expropriated. The landowner must be placed in a pecuniary position after the taking which is as good as that which he enjoyed before the taking. State Department of Highways v. Bitterwolf, 415 So.2d 196 (La.1982); State v. Keller, 520 So.2d 1242 (La.App. 5th Cir.1988). The measure of compensation is generally the market value of the property, according to its highest and best use. State, through Department of Highways v. Kennedy, 193 So.2d 848 (La.App. 1st Cir.1966); writ refused 250 La. 273, 195 So.2d 149 (1967); State v. Keller, supra. One tool in property evaluation is the use of comparables. However, it is only one of the means to fix just and adequate compensation. State, through Department of Highways v. Kennedy, supra; State v. Keller, supra.
At trial testimony given by three expert appraisers was offered.[2] The first *569 of those was J. Bradley Oubre who testified on behalf of the landowners. Mr. Oubre submitted two evaluations of the property. One dated March 23, 1984 values the land at $220,700.00, $0.56 per square foot. In that evaluation Mr. Oubre states, "Comparables in the immediate area are almost non-existant. This is a product of the threat of expropriation existing since 1971." Mr. Oubre, who was retained by the landowners, completed a second appraisal of the property on March 1, 1988. In that appraisal he valued the land at $698,348.00 or $1.76 per square foot. When asked to explain the vast difference in valuation between the two appraisals which were made on the same property at the same point in time, Mr. Oubre testified that he had recently done some additional work in the area and had "made some additional discoveries" that were pertinent and affected the appraisal. Mr. Oubre explained that land values at the time of the taking were impacted by the fact that the State had made public its plans for construction in the area and prudent buyers would be aware that enjoyment and use of property effected would be restricted while the public construction was ongoing. Therefore, Oubre explained, sales prices at that time did not fairly depict market value.
Mr. Oubre used the comparable method in both appraisals. He fully explained comparables used and adjustments made in both appraisals. However, he did admit that the comparables used in the second appraisal were in the official parish record at the time of the first appraisal, although he did not use them at that time. It is also obvious from statements in his original appraisal that he was aware of the extended expropriation at that time. Mr. Oubre concluded that the best and highest use of the land is R-3. He testified that the tract would be desirable to a developer because of its size and because it had more highway frontage than other tracts sold in the area.
The State offered testimony of Jack E. Evans, Jr., an expert in real estate appraisals who had been previously qualified as an expert in eight parishes. It was on his original appraisal that the State based its first $94,450.00 deposit. He also used the comparables method of valuation in his determination that the land was valued at $218,604.00 or $0.55 per square foot. Mr. Evans testified that he considered sales before and after the taking of the subject property in order to establish trends in value.
Mr. Evans confirmed that the land was zoned R-3, but stated that demand in that rural area would not support the 126 multifamily units allowed as maximum density by local ordinances. He pointed out that the heirs of the landowners currently had constructed three separate private residences on the property and opined that the highest and best use would be to continue the use of the tract as a rural single family estate with a possibility of few multi-family units.
There was additional testimony from both sides regarding the value of trees on the property. The landowners presented evidence by an expert landscape contractor, Jeffrey Melancon, to show that various varieties of trees and other landscaping on the land had a total value of $150,000.00. Mr. Evans asserted that the landscaping was valued at $1,500.00. He further testified that valuation of trees would be improper in an appraisal of land zoned as R-3 and intended for use as 126 multi-family units as suggested by the landowners' expert, since in that case the trees would have to be removed and would create an extra expense to a developer, not an asset.
The landowners argue that Mr. Oubre's testimony was more credible and should have been heeded by the trial court. We reject this argument. The trial court is not obligated to accept the valuation of an expert. Expert opinions are not ordinarily conclusive and are generally regarded as advisory in nature. State Dept. of Transp. & Dev. v. Stumpf, 519 So.2d 279 (La.App. 5th Cir.1988); writ den 520 So.2d 753 (La. 1988). In his reasons for judgment the trial court stated he found "that the valuation of Mr. Evans comes the closest to the *570 measure of compensation allowed defendants." As we have previously stated in State Dept. of Transp. & Dev. v. Stumpf, supra at 282;
In expropriation proceedings, much discretion is granted to the trier of fact. The trial court's factual determinations as to value of property and severance damages, and his evaluation of and weight given to testimony of expert witnesses, will not be disturbed on review in the absence of manifest error. State, Dept. of Transp. v. Van Willett, 386 So.2d 1023 (La.App. 3 Cir.1980); State, etc. v. Estate of Aertker, 404 So.2d 316 (La.App. 3 Cir.1981).
The State chose six comparables, all in St. Charles Parish, varying in size from just over six acres to over 85 acres. All were arms length transactions on properties zoned residential, or some combination of commercial and residential.
The landowners originally used twentynine comparables. Of those six were in another parish, eight were small individual subdivision lots and twelve were Department of Transportation and Development purchases. Three of the comparables used which involve tracts of land similar in size and use to the subject property also had adjusted values of about $0.55 per square foot. In the 1988 amended appraisal five new comparables were added. All of these five are considerably smaller than the subject property, the largest being 3.353 acres. Given these circumstances, we do not find the trial court's factual finding of valuation of the property to be manifestly erroneous and consequently find no error in the assessment of damages.
The landowners also assert that the trial court erred in giving the State credit for the two deposits made into the registry of the court. As previously stated the State deposited $94,500.00 on June 22, 1983 pursuant to LSA-R.S. 48:441. An additional deposit of $126,700.00 was made after the settlement on September 18, 1984. Most of the funds were withdrawn by Sonnier representing himself as attorney for the estate.
The landowners argue that the State should bear the responsibility of the funds misappropriated by Sonnier. They argue further that because the 1984 settlement was annulled for ill practices by Sonnier in settling without his clients' permission, the entire judgment is null and credit cannot be given for monies paid by the State in that action. We do not believe the landowners are suggesting that had they received all of the funds in that suit they would be allowed to collect an additional $218,604.00 as a result of the second action.[3] Therefore, we are not convinced by defendants' argument that the State should not be allowed a credit in the first suit because the funds were misappropriated by defendants' attorney. Further, any loss suffered by rightful heirs who were not represented by Sonnier are more properly addressed against Sonnier and/or other heirs and not in this expropriation suit.
The State followed procedures set out in LSA-R.S. 48:441 et seq. in depositing funds with the registry of the court. Title vested in the State at that point. R.S. 48:445. It is the responsibility of the court, not the State, to disperse funds so deposited. R.S. 48:449. The State acted properly and is entitled to a credit as given for funds deposited.
The landowners assert that the trial court erred in awarding legal interest. LSA-R.S. 48:455, as recently amended, provides:
If the amount finally awarded for compensation exceeds the amount deposited, the judgment shall include legal interest on the excess from the date of legal demand until paid, but such interest shall not accrue on any award made for expert fees or attorney fees prior to judgment.
We have recently interpreted this statute to have a retroactive effect. State, DOTD *571 v. Mc Clendon, 552 So.2d 1220 (La.App. 5th Cir.1989) writs denied 556 So.2d 38 (La. 1990). Thus, an award of legal interest is warranted from date of judicial demand on the excess awarded. The initial expropriation suit was filed giving compensation of $94,450.00. That suit was answered on October 4, 1983 seeking additional compensation. Since the additional compensation ultimately found to represent just compensation was not deposited by the State until September 21,1984, we believe an award of interest on the excess amount is due from October 4, 1983 until September 21, 1984 and amend the trial court judgment accordingly.
We will now consider the propriety of awards for attorneys' fees and expert witness fee for J. Bradley Oubre. LSA-R.S. 48:453 E allows for an award of attorneys' fees in some expropriation cases at the trial court's discretion. Given the unusual circumstances of this case, we are not inclined to disturb the trial court's discretionary award of $10,000.00 in attorneys' fees.
Defendants also argue that expert fees in the amount of $5,390.00 should be awarded to their expert, J. Bradley Oubre. In view of the fact that the trial court awarded costs to defendants without itemizing those costs, we are unable to determine if expert fees were awarded. We remand this matter for clarification on this issue only.
Accordingly, the judgment of the district court is affirmed but amended to award to defendants legal interest on $126,250.00 from October 4, 1983 to September 21, 1984. The matter is remanded only for clarification of the award of costs as previously stated.
AMENDED AND AFFIRMED IN PART, AND REMANDED IN PART FOR CLARIFICATION.
NOTES
[1] The balance of this second deposit, $10,359.60, was withdrawn by Jo Ann Davis.
[2] Two were property appraisers and one was a landscape appraiser. Additionally a report by a fourth expert, who did not testify, was introduced but dismissed by the trial court as incomprehensible.
[3] In brief the State asserts that $73,990.87 of the funds were recovered from Sonnier and returned to the registry of the Court. Also, approximately $41,139.63 of the funds were accounted for as proper dispersements for fees and as payment to some of the heirs. This accounting is not disputed by the landowners.