608 So.2d 1069 (1992)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
Alfred SCRAMUZZA, et al.
Nos. 92-CA-318 to 92-CA-328.
Court of Appeal of Louisiana, Fifth Circuit.
October 27, 1992.
Writ Granted in Part/Denied in Part January 15, 1993.
*1072 Ronald J. Bertrand, Rayne, for plaintiff/appellant State of Louisiana, Dept. of Transp. and Development.
Thomas Lee, Harahan, Mack E. Barham, Robert E. Arceneaux, Barham & Markle, PLC, New Orleans, for defendants/appellees Alfred Scramuzza, et al.
Before KLIEBERT, BOWES and CANNELLA, JJ.
CANNELLA, Judge.
The State of Louisiana, Department of Transportation and Development (DOTD), appeals from judgments rendered on September 21, 1990, December 18, 1990 and February 6, 1991 in consolidated expropriation suits[1]. We reverse in part, amend in part and affirm in part.
In the summer of 1988, DOTD filed eleven suits to expropriate certain properties, located in St. Charles Parish, for construction of a highway interchange at Airline Highway and Interstate 310. The defendants, property-owners in the respective cases, are Alfred Scramuzza, Patricia Terranova, Margaret Terranova, John M. Key, Alice Fuselier Key, John Scott Key, Shelby Stumpf Key, Floyd H. Putnam, Christiane P. Putnam, John L. Rumold, Helen E. Rumold, Joseph J. LaFranca, Jr., Ninette V. LaFranca, Louis P. Martin, Kwong Yet Lee, Henry Lee, Pauline Landis Babin, Yvonne Babin Yankovich, Louis L. Babin, Jr., Vivian Babin Piazza, Lawrence L. Babin, Robert J. Doskey, individually and doing business as American Land and Development Company, and Larsen Motor Lines, Inc. (landowners). The properties are located in an area known as the Old Kenner Landfill and are part of the Beltway Industrial Park, a "paper" subdivision approved by the Parish in 1969, but never developed. The subdivision consists of unimproved lots of various sizes. The only parcel with frontage on Airline Highway belongs to Larsen Motor Lines, Inc. and that frontage is separated from direct access to the highway by a borrow pit or ditch. No streets were ever constructed and sole access is over a bridge and dirt road built for the landfill purposes. At the rear is a shooting range, which is used by local police departments.
A jury trial was held on December 4 and 5, 1989 to establish values for the land taken and severance damages. The jury returned a verdict awarding compensation of $.38 per square foot to each landowner, except Larsen Motor Lines, Inc., which received $.86 per square foot, and certain severance damages.
On May 21, 1990, the landowners filed a Motion For Judgement Notwithstanding the Verdict (JNOV), Alternative New Trial, or Alternative Additur. It was heard on June 18, 1990, taken under advisement and, on September 21, 1990, the district judge granted the Motion for JNOV, increasing the compensation for the land taken to $2.23 per square foot for Larsen Motor Lines, Inc. and to $1.75 per square foot for all other landowners and awarding attorney fees of $50,000. The severance damages, awarded by the jury, were allowed to remain.
On October 2, 1990, the landowners filed a Motion For Judgment Notwithstanding The Verdict, Alternative New Trial or Alternative Additur regarding the award of attorneys fees. It was heard on November 6, 1990, taken under advisement and, on December 18, 1990, the district judge increased the attorney fees to $125,000.
On remand from this court, 594 So.2d 517, on February 6, 1992, the district judge adhered to his original judgments of September 21, 1990 and December 18, 1990, and:
*1073 1. Granted the landowners Motion for JNOV;
2. Awarded the landowners (except Larsen Motors Lines, Inc.) $1.75 per square foot for the expropriated property;
3. Awarded severance damages to landowners, Scramuzza ($2919) and Martin ($5475);
4. Awarded the landowners all court costs and expert witness fees;
5. Gave credit to DOTD for sums already paid;
6. Awarded the landowners legal interest from date of judicial demand on all sums due, including the amount placed in the registry of the court; and
7. Awarded attorney fees to the landowners of $125,000.
In that same judgment of February 6, 1992, the district judge, also:
1. Awarded Larsen Motor Lines, Inc. $2.24 per square foot for the expropriated property; and
2. Conditionally granted the landowners a new trial, in the event that the judgment on the Motion for JNOV is reversed on appeal.
During the trial, eight of the eleven landowners testified, on behalf of all the owners, that the land is high, dry, compacted and suitable for construction. They said that the property had been a sanitary landfill and no garbage was dumped there, only trash. A videotape of the property was shown in conjunction with testimony. They testified about their purchases of the various parcels, how they bought the land for future development and how the area had been designed and approved for a business or industrial park in 1969. Joseph Bush, an horticultural expert, testified about the types of plants and trees growing on the property. Joseph Ruello, a surveyor, testified about the varying elevations of the property, mostly between one foot and four-and-one-half feet above sea level, although some parts are lower.
DOTD witnesses testified that soil testing of the property showed that it contained much organic material from the landfill operations. Steve Bokum, a geologist, said that pilings would be required for any construction because of the low compressive strength of the soil. Edward Bodker, an environmental expert, testified that, although garbage trucks had been seen entering and leaving the area, he did not conduct studies of the vegetation in the landfill. Naim Afis, DOTD's project engineer and expert in the field of highway construction, described the project for which the land was expropriated, noting that pilings and footings would be used and that the existing soil would have to be removed and replaced with clay. Dr. Lloyd Baehr, a wetlands and permit expert from the U.S. Army Corps of Engineers, described the terrain as swamp, breaking up into marsh and then into open water. He stated that, because the area surrounding the property is wetlands, any fill activity on the land would probably require a permit, a lengthy and involved process.
To help establish the value of the property, the parties presented the opinions of real estate appraisers. The landowners' expert was Carlos Pumila, a long-time appraiser, but with little experience in expropriation proceedings. He visited the site, did a fair market appraisal and concluded that the property was worth between $2.25 and $3.00 per square foot. He used three comparables. The first was a 1988 sale of property on the south side of Airline Highway, from Exxon to DOTD, involving 12,283 square feet for $2.95 per square foot; the second was a sale of Orleans Parish property, from C.F. Hul to DOTD, involving eight acres for $2.29 per square foot; the third was a 1988 sale of wetlands to the southwest, from Kevin Vigurie to DOTD, involving 17,395 acres for $1.60 per square foot. Both the jury and district judge rejected the method and conclusions of Carlos Pumila.
Jack Evans was the real estate appraisal expert of DOTD. He had extensive experience in condemnation appraisals, both as an independent appraiser and as a DOTD appraiser. He testified that, to evaluate market value, the most common and preferred method is the direct sales comparable approach. *1074 He defined market value as the price on which a willing buyer and a willing seller would agree, without the stress of a forced sale. Evans said that he considered the physical characteristics of the land, its legal use and the economic implication reflected by comparable sales. He testified that he reviewed various maps (zoning and flood), a soil-boring survey and aerial photographs. Evans stated that the soil, composed of chalky clay, requires pilings. He confirmed the elevation (between one foot and four feet) and stated that construction required a permit or a letter of consistent use from the Louisiana Coastal Zone Management Office, which oversees construction on fastlands (leveed wetlands under pumps). Evans described twenty-seven sales, on the north side of Airline Highway, in the vicinity of the property herein, used in his analysis.[2] He also referred to seven more recent sales on the south side, but noted that the south side was intrinsically more valuable (from $1.37 per square foot to $2.55 per square foot) because it had direct access to Airline Highway, no borrow pit, a zoning difference, available utilities and was not a landfill. To compare the increase of sale prices, Evans cited seven sales on the south side, between 1981 and 1987, as well as one pending sale. He averaged the prices of the old north side sales and the seven south side sales in order to arrive at a percentage increase attributable to the north side of Airline Highway. He concluded that, because of use limitation, the north side interior parcels historically sold for 19% of the south side interior parcels and the north side front parcels sold for 45% of the south side front parcels. He arrived at a value for the landowners' north side interior parcels of $.38 per square foot and for the Larsen Motor Lines, Inc. parcel of $.86 per square foot.
DOTD appeals from the judgments of September 21, 1990, December 18, 1990 and February 6, 1992.
DOTD argues five errors to this court. It first asserts that the district judge erred in setting aside the jury verdict and in granting the Motion for JNOV. Second, it asserts that the district judge erred in awarding legal interest on the amount deposited by the state, instead of on the difference between the amount deposited and the award. Third, it asserts that the attorneys fees should be reduced. Fourth, it asserts that the district judge erred in assessing court costs and expert witness fees against DOTD. Finally, it asserts that the district judge erred in granting a conditional new trial.

Judgment Notwithstanding the Verdict
At the outset, it is important to acknowledge the different positions of the trier of fact, the jury, and the district court. Each had a specific standard to apply and burden of proof to consider concerning the verdict and judgment which they rendered. When facing a verdict after trial, the trier of fact, the jury, must consider the standard of "a preponderance of the evidence". When a party has proven his case to that standard, he is entitled to prevail. When facing a Motion for JNOV, the district judge must consider the standard of "reasonable men could not arrive at a contrary verdict." When mover has convinced the district judge that this standard was met, the motion should be granted. If the motion was granted based on the district judge's evaluation of the evidence and credibility of the witnesses, then it was improperly granted and should be reversed.
DOTD contends that the district judge erred because he improperly weighed evidence and substituted his own evaluation and opinion of the witnesses for that of the jury, which is impermissible in deciding a motion for JNOV. DOTD points out that the district judge ruled, post-verdict, that the testimony of both experts was flawed, should be disregarded and that there was no substantial evidence for the jury's assessment *1075 of value. The district judge then made his own assessment, stating that the methodology of DOTD's expert was "legally unacceptable" because it employed old sales as comparables and formulated averages to arrive at the conclusion. DOTD argues that the methodology of Jack Evans was proper and/or was a factor to be considered by the trier-of-fact, the jury, and should not be disregarded unless reasonable men could not have arrived at a contrary verdict. DOTD contends that, if the evidence was flawed, the landowners allowed it to be introduced and presented to the jury, without objection. No mention was made of the use of old comparables or the impropriety of averaging during the trial or in the jury instructions. DOTD contends that the jury verdict was one which reasonable people could have rendered and that the district judge erred in substituting his judgment for the jury's.
The landowners argue that the JNOV was proper, because the evidence was legally insufficient to support the jury verdict. They contend that the issue, like sufficiency of evidence, is a legal issue, rather than a factual one. They contend that Evans' appraisal failed to meet the legal requirements for the methodology he purported to use, thus was "legally unacceptable" and did not constitute "substantial evidence" upon which a verdict could be based. They contend that it is impermissible to use old sales and "averaging" in the market data method of evaluating property. They assert that the district judge properly calculated the values, based on two true comparables, and DOTD did not challenge those values.
A JNOV is properly granted "only when the facts and inferences are so strongly and overwhelmingly in favor of one party that the trial judge believes reasonable men could not have arrived at a contrary verdict." Adams v. Security Ins. Co. of Hartford, 543 So.2d 480, 486 (La.1989). Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991).
"A JNOV is based on a different standard from additur and remittitur, namely, that based on the evidence there is no genuine issue of fact." Trans Global Alloy v. First Nat. Bank, 564 So.2d 697, 710 (La.App. 5th Cir.1990), affirmed in part, rev'd in part on other grounds, 583 So.2d 443 (La.1991); LSA-C.C.P. art. 1811, Comments1984. Thus, if the jury's verdict is one which reasonable people could have rendered or if the trial court is convinced that, under the evidence, reasonable minds could differ as to the amount of damages, the granting of a JNOV is improper. Anderson v. New Orleans Public Service, supra, Adams v. Security Ins. Co. of Hartford, supra; Trans Global Alloy v. First Nat. Bank, supra.
In considering a motion for JNOV, the trial court may not weigh the evidence, substitute its judgment of facts for that of the jury, or pass on the credibility of the witnesses. Anderson New Orleans Public Service, supra; Trans Global Alloy, supra. Furthermore, the court should consider all of the evidence, not just the evidence that supports the non-mover's case, and should give the non-mover the benefit of every legitimate and reasonable inference that can be drawn from the evidence by the jury. Dept. of Transp. and Dev. v. Wahlder, 554 So.2d 233 (La.App. 3rd Cir.1989); McClain v. Holmes, 460 So.2d 681 (La.App. 1st Cir.1984).
This court, in reviewing a JNOV, must use the aforementioned criteria in deciding whether or not the motion was properly granted. Anderson v. New Orleans Public Service, supra. If the reviewing court determines that the trial court erred in granting the motion, because reasonable men in the exercise of impartial judgment might reach a different conclusion than the one proposed by the moving party, then the JNOV must be reversed and the jury verdict should be reinstated. Anderson v. New Orleans Public Service, supra.
When a landowner challenges the amount DOTD deposits for compensation for expropriated land, the landowner must prove the greater value by a preponderance of the evidence. State, DOTD v. Dietrich, 555 So.2d 1355 (La.1990). The question of *1076 what damages will appropriately compensate the landowner is one of fact. State v. Tramuta, 101 So.2d 450 (La.1958); State, Dept. of Transp. v. Boyce Gin Co-Op, 397 So.2d 1087 (La.App. 3rd Cir.1981). Such determination is necessarily dependent on evidence presented by expert witnesses. State, Dept. of Transp. v. Boyce Gin Co-Op, Id. However, the fact finder is not obligated to accept an expert's opinion in expropriation cases, since those opinions are not binding and are merely advisory in nature. State, Through DOTD v. Estate of Davis, 560 So.2d 566 (La.App. 5th Cir. 1990), affirmed in part, amended in part, reversed in part and remanded, 572 So.2d 39 (La.1990); State Dept. of Transp. & Dev. v. Stumpf, 519 So.2d 279 (La.App. 5th Cir.1988), writ denied, 520 So.2d 753 (La. 1988).
Market value of the property is the general measure of compensation, according to its highest and best use. State v. Keller, 520 So.2d 1242 (La.App. 5th Cir. 1988). The use of comparable sales is one of the tools to be used in making the determination; however, it is not the sole determining factor. State v. Keller, supra; State through DOTD v. Estate of Davis, supra.
Much discretion is afforded the trier of fact in evaluating property in expropriation cases. State Through DOTD v. Estate of Davis, 572 So.2d 39 (La.1990). The evaluation of and weight given to the experts' testimony will not be disturbed on review in the absence of manifest error. Id.
In a JNOV the trial judge is entitled to evaluate the sufficiency of the evidence, since that is a legal question. See Carter v. Avondale Shipyards, Inc., 415 So.2d 174 (La.1981); Barriffe v. Ortiz, 476 So.2d 371 (La.App. 4th Cir.1985); Hebert v. Lake Charles American Press, 427 So.2d 916 (La.App. 3rd Cir.1983). The sufficiency of the evidence analysis relates to the question of preponderance of the evidence. "The evidence is sufficient to constitute a preponderance when the proof, taken as a whole, establishes that the fact... sought to be proved is more probable than not." Carter v. Avondale Shipyards, Inc., supra, at 175. However, there exists no legal authority for discounting the testimony of a witness because the testimony is "legally unacceptable". It may be factually impeachable or incredible, but where it is as here, advisory in nature, it must be weighed along with the other evidence. The weight to be given the testimony is for the trier-of-fact, the jury, to determine.
The district judge rejected the jury's verdict, which tracked Evans' testimony, because he believed that reliance on old sales and averaging of sale prices were improper factors to use in the comparable sales method of evaluation. He stated that the figures were arrived at with no consideration for the individual differences between the old parcels and the landowners' property and concluded that Evans' testimony was "legally unacceptable." He then proceeded to calculate the value solely based on the Exxon and Vigurie sales to DOTD in 1988.
After our review, we find that the district judge erred and committed manifest error in granting the Motion For JNOV. The facts and inferences herein are not so overwhelmingly in favor of the landowners that reasonable men could not have arrived at the verdict. Anderson v. New Orleans Public Service, supra. In order for the district judge to have reached his decision, he had to pass on the credibility of the witnesses and weigh the evidence, which is prohibited in a review of a motion for JNOV Anderson v. New Orleans Public Service, supra. Furthermore, the evidence was "legally" sufficient to constitute a preponderance of the evidence. Consequently we reverse the judgment which granted the Motion For JNOV.

Conditional New Trial
We now address the issue of whether the district judge erred in granting a conditional new trial, in the event this court reversed the JNOV.
La.R.S.C.C.P. art. 1811(C) provides:
"C.(1) If the motion for a judgment notwithstanding the verdict is granted, the *1077 court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
(2) If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise."
A new trial may be granted if there is good ground therefore (C.C.P. art. 1973). It shall be granted:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done. La.C.C.P. art. 1972.
Here, the district judge granted the conditional new trial and rendered a judgment reiterating his decision in the JNOV. He granted the conditional new trial because he said that the jury verdict was contrary to the law and evidence. We disagree.
DOTD produced the testimony of the highway project engineer, a wetlands expert from the U.S. Army Corps of Engineers, an expert geologist, an environmental expert and a real estate appraiser. The testimony described the physical characteristics of the land, its legal potential use and economic implications from an analysis of near-by property. While the landowners and the jury differed in their conclusions, the determination of market value was a factual decision to be made by the jury, after weighing the credibility of the witnesses and considering all of the evidence. After our review, we find that there was sufficient evidence by DOTD to constitute proof of market value by a preponderance of the evidence. Therefore, we reverse the judgment granting a conditional new trial and reinstate the verdict reached by the jury. See: Anderson v. New Orleans Public Service, supra., See also: Seals v. Gosey, 565 So.2d 1003 (La.App. 1st Cir.1990); writ denied, 569 So.2d 983 (La.1990).

Legal Interest
Next, DOTD complains that the district judge erred in awarding legal interest on the portion of the judgment which included the amount deposited by the state at the initiation of the proceedings. It contends La.R.S. 48:455 provides that interest is to be awarded only on the excess amount between the amount deposited and the amount awarded.
The landowners contend that interest on the whole amount is warranted because the state failed to comply with the provisions of La.R.S. 48:442(3)(d) and La.R.S. 48:443 requiring two or more persons to estimate compensation, citing State Through DOTD v. Estate of Davis, 572 So.2d 39 (La.1990). They contend that expropriation proceedings are a derogation of the right of individuals to own property and thus must be strictly construed against the expropriating authority. They assert that proper relief for the expropriating authority's failure to scrupulously follow the procedures is an award of interest on the entire award, including the deposited amount. DOTD disagrees, asserting that the remedy for failure to follow the procedures is only a dismissal under La.R.S. 48:447.
Initially, we note that several pertinent provisions of the expropriation statutes were amended in 1988. Six of these consolidated cases fall within the earlier provisions and the other five (filed after September 9, 1988, the effective date of the 1988 amendments) fall within the later provisions. The landowners affected by the earlier provisions are Alfred Scramuzza (two cases), the Terranova family, the Keys, the Putnams, the Rumold family and the LaFranca family. We will refer to them as the Scramuzza group. The landowners affected by the later amendments are Louis Martin, the Lees, the Babins, *1078 Robert Doskey and Larsen Motor Lines, Inc. We will refer to them as the Martin group. Because the amendments affect substantive rights, they cannot be given retroactive application. See: State Through DOTD v. Estate of Davis, supra. Consequently, our review will be done according to the appropriate provisions for the respective groups. Further, because we reverse the award rendered in the JNOV, our review of this issue is limited to whether interest is due on the deposited amount as a "penalty" or compensation to the landowners for the neglect of DOTD to have two estimators calculate the deposited value, as required by law.
The 1975 enactment of La.R.S. 48:455 states that:
"The judgment rendered therein shall include, as part of the just compensation awarded, legal interest on the amount finally awarded as of the date title vests in the plaintiff to the date of payment, but interest shall not be allowed on so much thereof as has been deposited in the registry of the court."
Its successor, enacted in 1988 and effective as of September 9, 1988 provides:
"If the amount finally awarded for compensation exceeds the amount deposited, the judgment shall include legal interest on the excess from the date of legal demand until paid, but such interest shall not accrue on any award made for expert fees or attorney fees prior to judgment."
Both provisions require that interest be awarded on the excess between the amount deposited and the final amount of compensation awarded. However, they differ in reference to the date from which the interest payment is calculated. In the former, that date is the date title vests in the plaintiff (the date the estimated compensation is deposited in the registry of the court. La.R.S. 48:445). In the latter provision, interest is due from date of legal demand for compensation. Because some of these cases fall within one provision and the others fall within the other, the date will vary accordingly. See: State Through DOTD v. Estate of Davis, supra.
While we considered the argument presented by the landowners for an award of interest on the whole amount, we find nothing to support their position in the law or jurisprudence. The Davis case, cited by the landowners, is not dispositive of this issue.
In this case, the DOTD petition, on its face, complies with the requirement that two or more persons estimate the value of the property being expropriated. However, in testimony Evans stated that he alone calculated the amount, because it was customary in cases involving less than $75,000 and only the Larsen tract exceeded that amount.
The 1975 provision of R.S. 48:443 states that:
"The right-of-way officer shall select two or more persons to make the estimate, but two of them must be right-of-way appraisers or agents who are in the regular employ of the department or licensed realtors who are familiar with land values in the vicinity of the property to be taken."
The 1988 amended version includes a licensed broker and added further instructions.[3]
While DOTD did not comply with the statute, we do not find that the failure entitled the landowners to interest on the deposited amount in derogation of La.R.S. 48:455. The remedy for their complaint was an action to dismiss under La.R.S. 48:447.[4] No other penalty is set out in *1079 statute for the expropriating authority who neglects to follow the procedures precisely, and we decline to fashion one from interest, under these facts.
In regard to the judgments rendered pursuant to the jury verdicts, we note that two exceeded the deposited amounts: Case No. 33, 997-E against Alfred Scramuzza ($125) and the case filed against Louis Martin ($65). Interest is awarded properly on the excess in both judgments. However, both judgments award interest from date of judicial demand. That is proper under the 1988 amendment which affects the Martin suit, but the suit against Alfred Scramuzza falls within the 1975 version. Under that provision, interest on the excess is due from the date title vests in the plaintiff, the date that the amount owed to Alfred Scramuzza was deposited in the registry of the court. La.R.S. 48:445. Consequently, the judgment of the jury verdict is amended to reflect the appropriate date.

Attorneys Fees
DOTD next complains about the attorney fees awarded to the landowners. The initial JNOV (September 21, 1990) awarded $50,000. The next judgment (December 18, 1990) increased the award to $125,000, and the last judgment (February 6, 1992) kept that amount. LSA-R.S. 48:453(E) provides for attorney fees not to exceed 25% of the difference between the award and the amount deposited in the court registry. In this case, the fees are only appropriately awarded to Mr. Scramuzza and Mr. Martin, since those are the only landowners awarded more than the amount deposited. The excess amounts are $125 and $65, respectively. Thus, the total amount of attorney fees allowed by law are $47.50. While we do not agree with the unfairness of the legislative limitation, the courts are mandated to follow the statute and are not authorized to award attorney fees in excess of the statutory limitation. Therefore, we find that the trial judge erred in the amounts of attorney fees awarded in the three judgments and amend the amount of attorneys fees in the judgments of September 21, 1990, December 18, 1990, and February 6, 1992 to $47.50.

Court Costs
Finally, DOTD urges this court to assess costs and fees against the landowners. It contends that, if the JNOV and the new trial judgment are reversed, it is entitled to be relieved of costs.
The original judgment cast the landowners for costs and fees, except for Mr. Scramuzza and Mr. Martin who were awarded compensation in excess of the deposited amount. The prevailing party is normally awarded costs. La.C.C.P. art. 1920. In this case the prevailing party is DOTD, except as to the individual Scramuzza and Martin suits. We find, however, that equity requires that the landowners be relieved of costs and fees. We therefore cast DOTD for all costs and fees in the trial court, in all eleven suits. Costs of this appeal are to be divided equally between the State and the landowners.
Accordingly, the JNOV rendered September 21, 1990 and the judgment regarding the Conditional New Trial rendered February 6, 1992, are hereby REVERSED and the jury verdict is REINSTATED and AFFIRMED as to the measure of compensation. The judgment awarding court costs to DOTD and against the landowners is REVERSED (Cases No. 33,998, 34,023, 34,024, 34,067, 34,125, 34,385, 34,397, 34,431 and 34,465). The judgment awarding court costs to the landowners and against DOTD is AFFIRMED (Cases No. 33,997 and 34,312). In Case No. 33,997, the judgment is hereby amended to award legal interest on the excess between the deposited amount and the judgment award, commencing from the date DOTD deposited the estimated compensation into the registry of the court, until paid. The award of legal interest in Case No. 34,312 is AFFIRMED. The denial of an award of legal interest in Case Nos. 33,998; 34,023; 34,024; 34,067; 34,125; 34,385; 34,397; 34,431; 34,465 is AFFIRMED. Finally, the award of attorney fees of $125,000 in the judgment rendered *1080 December 18, 1990 and February 6, 1992 and the award of $50,000 in the judgment of September 21, 1990 are reversed. Attorneys fees are hereby awarded in the amount of $47.50 pursuant to La.R.S. 48:453(E). The three judgments of September 21, 1990, December 18, 1990 and February 6, 1992 are hereby AFFIRMED in every other respect.
Costs of this appeal are to be divided equally by DOTD and the landowners.
JUDGMENT ON THE JNOV, THE NEW TRIAL AND COURT COSTS IS REVERSED, JURY VERDICT IS RE-INSTATED AND AMENDED, AND ATTORNEYS FEES ARE AMENDED, AND BOTH AS AMENDED, ARE AFFIRMED.
NOTES
[1] Expropriation for highway purposes is regulated by La.R.S. 48 § 441 et seq.
[2] All sales were at least five years old, sixteen were more than sixteen years old and seven were more than ten years old. The prices ranged from $.11 per square foot to $.73 per square foot. Evans averaged the sales and arrived at $.32 per square foot for the interior parcels and $.64 for the Airline Highway frontage tracts.
[3] La.R.S. 48:443: ...

B. Each estimator in determining the extent of the owner's loss shall consider the replacement value of the property taken.
C. Prior to filing its petition, the department shall provide to the owner the following information with respect to each estimate of the owner's loss.
1) The name, address, and qualifications of the person or persons preparing the estimate.
2) The amount of the estimate.
3) A description of the methodology used in the estimate.
[4] Both the 1975 and 1988 provisions of R.S. 48:447 further state that failure to file a motion within the time provided constitutes a waiver of all defenses except claims for compensation. However, the time delays for filing are different.