540 So.2d 352 (1989)
Charles MITCHELL, III
v.
The FIRE AND CASUALTY INSURANCE COMPANY OF CONNECTICUT, Orion Group Inc.
No. CA 87 1261.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
*353 Richard Broussard, Lafayette, for plaintiff-appellant Charles Mitchell, III.
Leah Barron, Glen Scott Love, Baton Rouge, for intervenor-appellant United States Fidelity & Guar. Co.
Albert Dale Clary, Baton Rouge, for defendant-appellee The Fire and Cas. Ins. Co. of Connecticut.
Before LOTTINGER, EDWARDS, WATKINS, SHORTESS and SAVOIE, JJ.
EDWARDS, Judge.
Plaintiff, who was injured in an automobile accident, appeals from a trial court decision in his favor, alleging three assignments of error. For the following reasons we affirm, but amend to increase the award of damages.
On December 6, 1983, Charles Mitchell was employed as a delivery person for an office supply company in Lake Charles, Louisiana. While in the process of making deliveries in Beaumont, Texas, Mitchell's delivery van was violently struck in the rear by another vehicle. The collision was so violent that the bolts securing the van's driver seat were sheared in half, allowing Mitchell to be thrown forward into the steering wheel and dashboard area.
Mitchell was rushed by ambulance to St. Elizabeth's Hospital in Beaumont where he complained of severe back, neck and knee pains. After being released from St. Elizabeth's, a co-employee drove Mitchell back to Lake Charles. Two days later, on December 8, 1983, when Mitchell's pain worsened, he saw Dr. Don Ray England, a Lake Charles Chiropractor. Mitchell complained of pain in his neck, back and knee areas. Upon examination, Dr. England felt that Mitchell needed an orthopedic evaluation, and suggested that he see Dr. Dale Bernauer, M.D.
Dr. Bernauer's first examination of Mitchell was on December 9, 1983. At that *354 time Mitchell's chief complaint was pain in the neck and back areas, as well as the right knee. Dr. Bernauer found that Mitchell was suffering from muscle spasms and "pain with extension of the back and pain with flexion fully." Additionally a squeeze test of the perineal and sciatic nerves indicated irritation of the sciatic nerve. Dr. Bernauer saw Mitchell again on December 12 and December 21. Mitchell repeated the same complaints on each visit. During this period of treatment, Dr. Bernauer conservatively treated Mr. Mitchell by prescribing pain and anti-inflammatory medications.
Mitchell's next visit to Dr. Bernauer was on January 4, 1984. Mitchell's pain had become worse after a fall at his apartment on December 22. Mitchell was admitted to Lake Charles Memorial Hospital on January 4, 1984, where a myelogram test showed two herniated discs.
Although Mitchell was already receiving worker's compensation and medical payment benefits, upon the discovery of the disc injuries, he filed suit against his employer's uninsured motorists insurer, defendant herein, the Fire & Casualty Insurance Company of Connecticut, Orion Group Inc.
The negligent driver's insurer immediately settled for policy limits of $15,000.00, with Mitchell receiving half and the worker's compensation insurer receiving the other half.
While it was not stipulated at trial, it is undisputed that the myelogram performed on January 4, 1984 revealed the existence of two herniated discs at C5-C6. The chief defense of the defendant was that the fall in Mitchell's apartment actually caused the herniation of his discs and that they did not occur as a result of the automobile collision. A jury trial was held on March 23 and 24, 1987, in the Nineteenth Judicial District Court, with the Honorable Frank Foil presiding. Dr. Bernauer testified that it was more likely than not that the herniated discs were the result of the automobile collision and not of the subsequent fall. Dr. Norman Morin, M.D., an orthopedic expert called by the defendant, testified that in his opinion Mitchell's herniated discs were the result of the fall sustained by Mitchell.
Before the jury retired to deliberate, counsel for Mitchell requested a specific jury instruction pertaining to the proper weight to be given to the opinion of a treating physician, such as Dr. Bernauer, versus a physician who makes a one-time evaluation for purposes of trial, such as Dr. Morin. This requested instruction was denied by the trial judge.
The jury returned with a verdict in favor of Mitchell, but awarded him only $5,000.00 for past medical expenses and $20,000.00 for all other damages, for a total of $25,000.00. From the total jury award of $25,000.00, the trial judge deducted the $15,000.00 already received by the plaintiff which he had split with the worker's compensation insurer. Further, from the $10,000.00 that remained, the trial judge allowed the worker's compensation intervenor an additional $5,928.80 for reimbursement of medical and compensation payments to Mitchell. The end result was that Mitchell received the small sum of $4,071.20.
Mitchell appeals from this judgment alleging the following assignments of error:

I.
The trial court erred in permitting the testimony of Dr. Morin concerning his opinion of the cause of Mr. Mitchell's injuries and disability in view of his ignorance of Mr. Mitchell's earlier medical history as recorded by Dr. England, which Dr. Morin himself considered to be an important factor.

II.
The trial court erred in refusing to instruct the jury on the proper weight to give to the opinions of a treating physician versus a physician who makes a one-time evaluation for purposes of trial.

*355 III.
The jury erred in assessing damages suffered by the plaintiff.

ASSIGNMENT OF ERROR NUMBER ONE
Plaintiff asserts the trial court erred in overruling his objection to an opinion given by defendant's medical expert, Dr. Norman Morin. When Dr. Morin was asked if he had an opinion as to the cause of the plaintiff's neck and back disc problems, he replied:
A Yes: I have. I think you have to go pretty much by the doctor's findings and what the patient tells you to some degree, certainly as it relates to the findings. If the patient exaggerates findings I mean complaints, and you can't correlate the findings to his complaints; then it leaves a question mark. But, let me read you something here from Dr. Bernauer's report.
Dr. Bernauer sent a report on May 22nd, '84 to this patient's counsel, Mr. Broussard, and he says here, on this Mr. Broussard: Objection. The court will rule on my objection at the time of trial.
Q (Mr. Clary) Go ahead.
A In the second paragraph of that report, heDr. Bernauer says, "Exam showsI originally saw Mr. Mitchell on 12/9/83. He said he was in a moving vehicle accident in Beaumont on 12/3/83. He was hit from the rear." It said, "He was taken to St. Elizabeth's Hospital, where he was in the emergency room for five hours. X-rays were negative by report there."
Then, he goes on to say something which is very important. He says, "Exam showed decreased range of motion of neck. Neurological examination was normal. Range of motion was full to the back, with pain with extension. Straight leg raising test was negative. Dorsiflexors were strong." Then, he goes on there for another paragraph or so. "He was seen again on 1/4/84. At that time, he said he had fallen; that his pain had gotten worse. He was admitted for physical therapy. He improved some, but continued to have right arm and neck pain. A myelogram was done which showed C5-C6 disk (sic). He had a problem, a urinary retention ..." And, he went on to say in the last line of that paragraph; "the patient developed weak dorsiflexion and straight leg raising test positive."
What I'm trying to tell the members of the jury or the court is that it would appear, from Dr. Bernauer's report, that initially these findings were not there, but became permanent or present following the fall at home. So, on the basis of Dr. Bernauer's report, confirmed to some large degree by the patient's complaints that he could barely move following this fall at home; I would say that the fall at home played a major role in the pathology that was found later on.
Q And that would be the neck and disk (sic) pathology?
A That's correct.
In effect, Dr. Morin was giving an opinion, based upon Dr. Bernauer's report, as to the causation of plaintiff's injuries. While it is established jurisprudence that an expert may not render an opinion based upon another expert's opinion, an expert is allowed to render an opinion based upon another expert's report or compilation of facts. See State v. Chapman, 410 So.2d 689 (La.1981); State v. Myles, 432 So.2d 1018 (La.App. 1st Cir.1983). Thus, we find no trial court error in permitting the introduction at trial of the opinion of Dr. Morin, which was based upon Dr. Bernauer's report.

ASSIGNMENT OF ERROR NUMBER TWO
Appellant argues on appeal that the trial court erred in refusing to grant his requested jury instruction relative to the weight of an opinion to be given by a treating physician versus a physician who sees the injured only once in preparation for litigation. While the exact requested instruction is not part of the record, there are several references to the "treating physician *356 charge", which was rejected by the trial judge.
LSA-C.C.P. art. 1793 allows the parties to request that particular jury instructions be given. The trial court is not required to accept the requested instructions verbatim, but the trial judge's own jury charge should be sufficient to reflect adequately the law and issues presented. Lincecum v. Missouri Pacific R. Co., 452 So.2d 1182 (La.App. 1st Cir.), cert. denied, 458 So.2d 476 (La.1984).
In reviewing this assignment of error, we are hampered by the plaintiff's failure to proffer the requested instruction. The lone source in the record of the requested instruction is the brief comment of the trial judge that he was, "not going to give it because I feel it would be a comment on the evidence." Plaintiff's counsel responded with, "that would be the treating physician charge?" The trial judge answered, "Yes." Had plaintiff proffered the requested instruction, we would have had opportunity to compare it with the general charge given to the jury. The absence of the instruction in the record is attributable to plaintiff and is the fatal flaw in this assignment of error.
Notwithstanding the absence of the requested instruction in the record, we find it essential to restate the standard of appellate review of jury instructions.
As stated, the instructions given to a jury must adequately reflect the law as it pertains to the facts and issues presented. The adequacy of jury instructions must be determined in the light of jury instructions as a whole. Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir.), cert. denied, 351 So.2d 161, 162 (La.1977). If the instructions are found to be proper, then the judgment appealed from should only be reversed for manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). On the other hand, if the instructions were improper or inadequate, we are required to reach our own factual determination without regard to the manifest error rule. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
If the instructions are found to be inadequate or improper, the appellate court is directed to conduct a trial de novo on the matters then before it. In doing so the appellate court is not limited by the finding of fact or the damages allotted by the trial court. See Gonzales; Gulf Wandes Corp. v. Vinson Guard Service, 459 So.2d 14 (La.App. 1st Cir.1984), cert. denied, 464 So.2d 312 (1985). See also, Suhor v. Gusse, 388 So.2d 755 (La.1980).
On the other hand, should there be no error in the instructions and they are found to be proper and adequate, then the allocation of damages will not be disturbed absent manifest error and/or an abuse of discretion. Should we find either, we can only increase the award to the lowest possible figure that a trial court could have granted rather than the unlimited award available under the Gulf test. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Taking the jury instructions as a whole, we find that they were a correct statement of the law. We do, however, find that the jury abused its discretion in awarding the plaintiff a total award of only $25,000.00.

ASSIGNMENT OF ERROR NUMBER THREE
In light of the overwhelming evidence indicating that the injuries occurred in the automobile collision, especially in light of the severity of the collision, we find there was trial court error in the amount of damages granted to Mitchell. The only evidence adduced at trial that Mitchell's injuries occurred in the fall at home, was the conclusion drawn by Dr. Morin, based on Dr. Bernauer's reports. This was an opinion rendered based upon another physician's report.
Dr. Morin did state that it was possible for the disc injuries to have occurred in the automobile accident, particularly in light of the severity of the collision. He further stated that the treating physician, Dr. Bernauer, would have been in a better position to determine when the discs had been herniated. Dr. Bernauer stated clearly, that *357 in his opinion, the automobile accident caused the herniation of the discs. He further stated that it was quite common for injuries, such as those suffered by Mitchell, to take time to develop and manifest themselves.
In light of the foregoing, we agree with the jury's verdict that Mitchell's injuries were caused by the automobile accident and not by the fall at his apartment. We amend the award of damages to Mitchell as follows:
At the time of trial, Mitchell had incurred over $36,255.02 in medical expenses which were paid by the worker's compensation insurer. Mitchell additionally had received $17,496.00 in compensation benefits. These sums indicate the severity of his injuries as well as the loss of income he has and will sustain as a result of the injuries.
It is undisputed that the testimony shows Mitchell's injuries will prevent him from continuing in the same type of employment as before the accident. Dr. Bernauer stated that the degree of pain associated with these injuries usually worsens over time. The degree of disability was said to be 25% to the neck area and 50% to the back.
Dr. Randolph Rice, a court recognized expert in the area of economic loss, testified at trial on behalf of Mitchell. Dr. Rice estimated the loss of past income and future income at $144,337.00; this amount was based upon an hourly wage of $3.65 an hour, and an expected work life of 20.61 years. At $5.35 an hour, the total amount would have been $207,000.00. At the time of the accident Mitchell was earning an hourly wage of $3.65 an hour, thus we base our award on that figure.
Viewing the evidence and the calculations of plaintiff's economist in the light most favorable to the defendant as might be found by a reasonable trier of fact, and taking into account the considerations based above, we conclude that $144,337.00 less the $17,496.00 that Mitchell received in compensation benefits, or a total of $126,841.00, is the lowest figure which could be awarded for loss of earning capacity, past and future.
Additionally, we conclude that an award of $115,000.00 for general damages is the lowest figure which could be awarded for the pain and suffering. From this award, we deduct the final sum received by Mr. Mitchell at trial, $4,071.20. Our award is thus $110,928.80. Morris v. State Department of Transportation and Development, 461 So.2d 606 (La.App. 1st Cir.1984); Wilson v. Wal-Mart Stores, Inc., 448 So.2d 829 (La.App. 2d Cir.1984); Redondo v. Consolidated Freightways Corp. of Delaware, 529 So.2d 1296 (La.App. 4th Cir. 1988).
We find enough testimony to substantiate the conclusion that Mitchell's injuries to his knee pre-existed the automobile accident and that his finger injury occurred in the slip and fall at home, thus we do not disturb these findings on appeal.

DECREE
For the foregoing reasons, we amend to increase the judgment and increase plaintiff's final total judgment from $4,071.20 to $222,769.80. The final judgment includes $144,337.00 for loss of income and future earning capacity. From this figure, we deduct the $17,496.00 plaintiff received in compensation wage benefits, for a total of $126,841.00. We additionally include the $110,928.80 award for general damages, less the $15,000.00 credit for the uninsured motorist defendant is entitled to, or a total of $95,928.80. Thus the final judgment is $222,769.80.
As amended, we affirm the judgment of the trial court. All costs of this appeal are to be taxed to defendant/appellee.
AFFIRMED AND AMENDED.
SAVOIE, J., dissents from the amendments and would affirm the decision rendered by the trier of fact.