625 So.2d 723 (1993)
Frank ENGOLIA and Priscilla Engolia
v.
Dr. Joseph ALLAIN, et al.
No. 92 CA 1785.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
*725 Lawrence J. Smith, and Glen Patrick McGrath, New Orleans, for plaintiff-appellant Frank and Priscilla Engolia.
Donald T.W. Phelps, Baton Rouge, for defendant-appellee Dr. Joseph Allain, et al.
Before WATKINS, SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Frank and Priscilla Engolia (plaintiffs) filed this medical malpractice suit against Dr. Joseph Allain[1] (defendant) seeking damages for the wrongful death of their daughter. From a jury verdict in defendant's favor, plaintiffs appeal.

FACTS
On Saturday, December 10, 1988, 20-year-old Carmella Engolia (Engolia) developed a sudden onset of severe neck pain while exercising at her home. She was taken to the emergency room at Our Lady of the Lake Regional Medical Center by her mother and boyfriend, and was seen by defendant, an emergency room physician on duty that night.
Defendant examined Engolia's head and neck and observed she was "exquisitely tender" in the region of the top of the left shoulder extending to the left side of the neck and into the region of the upper back. This exquisite tenderness indicated to defendant that Engolia had suffered a muscular/skeletal injury, and accordingly, defendant ordered x-rays of her neck and upper back. Based upon his examination, the patient's history, and his review of the x-rays, defendant concluded Engolia suffered a cervical strain while exercising. He treated her with injections of Stadol, a pain killer, and Phenergan, an anti-nausea medication, as well as a muscle relaxer and a cortisone preparation. He sent her home for bed rest and gave her prescriptions for Demerol, Phenergan, and Mepergan Fortis. Thereafter, defendant discharged her from the emergency room with instructions to follow up with her family physician.
Over the next few days, Engolia improved to the point that she was able to begin working at a new job. However, after she complained she was not feeling well on Thursday, December 15, her mother scheduled an appointment with their family physician, Dr. Susan Richarme (Richarme).
On Friday, December 16, 1988, Engolia, who was accompanied by her father, was seen by Richarme at the Hill Medical Clinic. Engolia explained to Richarme the history of her previous trip to the emergency room, and further explained that the night before coming to see her, she had started having problems again and had vomited. Upon examination, Richarme noted that Engolia experienced neck pain and a pounding head when *726 turning to the right. It was Richarme's impression that Engolia was suffering from a muscle spasm. However, to rule out an aneurysm as a cause of her problems, Richarme recommended a CAT scan be performed of her head and scheduled it for 1:00 p.m. that afternoon.
Engolia did not have the CAT scan performed as scheduled. However, because she was not improving, her mother telephoned Richarme on December 21, 1988, to inquire whether the CAT scan could then be ordered. Richarme did not feel comfortable ordering the CAT scan over the phone and suggested Engolia be brought back to her office the next morning for re-examination. Unfortunately, the next morning, December 22, 1988, Engolia was found dead in her bedroom. An autopsy revealed she died from the rupturing of an aneurysm in her brain.
Plaintiffs filed a medical malpractice claim against defendant alleging he failed to comply with the appropriate standards of care in his treatment of Engolia, and that such substandard care constituted a factor in her death. A medical review panel reviewed the evidence presented and rendered a unanimous decision in favor of plaintiffs. Plaintiffs then proceeded to trial against defendant. After a three-day jury trial, the jury rendered a unanimous decision in defendant's favor, specifically finding his treatment of Engolia did not fall below the applicable standard of care. The trial court subsequently rendered a judgment in favor of defendant and dismissed plaintiffs' claims. Thereafter, plaintiffs filed a motion for judgment notwithstanding the verdict, and alternatively, a new trial, both of which were denied by the trial court.
On appeal, plaintiffs contend (1) the trial court erred in its charge to the jury; (2) the jury was not entitled to hold defendant to a lesser standard of care than that established by the uncontroverted expert testimony at trial, or alternatively, to a minimum standard of medical care if that standard itself was negligent; and (3) the trial court erred in failing to grant plaintiffs' motion for new trial and/or motion for judgment notwithstanding the verdict.

JURY INSTRUCTIONS
Plaintiffs contend the trial court erred in giving the following jury charge: "It is not malpractice to make a mistake in diagnosis." Plaintiffs argue that if the jury followed this charge as given by the trial judge, then under no circumstances could it have found defendant guilty of malpractice as a result of the mistaken diagnosis, no matter what steps he did or did not take in arriving at his diagnosis.
It is well settled that adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. Dupuy v. Rodriguez, 620 So.2d 397 (La.App. 1st Cir.1993); Sparacello v. Andrews, 501 So.2d 269 (La.App. 1st Cir.1986), writ denied, 502 So.2d 103 (La. 1987). The adequacy of jury instructions must be determined in light of the jury instructions as a whole. Mitchell v. Fire & Cas. Ins. Co., 540 So.2d 352 (La.App. 1st Cir.), writ denied, 541 So.2d 1390 (La.1989). If the instructions are found to be proper, then the judgment appealed from should not be disturbed unless manifestly erroneous. Mitchell, 540 So.2d at 356; see also Wisner v. Illinois Cen. Gulf R.R., 537 So.2d 740, 745 (La.App. 1st Cir.1988), writ denied, 540 So.2d 342 (La.1989).
The trial court gave the following jury charge:
The law further provides that one of the duties of the physician is to make a diagnosis of the ailment of his patient, and if the physician fails to use the degree of skill ordinarily employed under similar circumstances by the members of his profession in the same medical specialty in making that diagnosis, then you may conclude he was negligent in his conduct. But a physician is not obligated in making a diagnosis to be correct all the time.
It is not malpractice to make a mistake in diagnosis. Making a diagnosis is an act of professional judgment and an incorrect diagnosis is not necessarily an act of negligence.

*727 Whether or not Dr. Allain failed to exercise the required degree of skill must be determined in light of conditions existing or facts known or [which] should have been known at the time he made his diagnosis and not through the light of knowledge gained through subsequent development.
Taking the jury instructions as a whole, we find they were a correct statement of the law and adequately informed the jury with regard to making a diagnosis. Accordingly, plaintiffs' first assignment of error is without merit as the trial court did not err in giving the questioned instruction.[2]

STANDARD OF CARE
Plaintiffs argue the jury was not entitled to hold defendant to a lesser standard of care than that established by the expert testimony at trial. Specifically, plaintiffs contend the jury disregarded the standard of care relative to a physician's taking of an adequate medical history prior to making a diagnosis or alternatively, the standard of care itself is negligent.
The record reveals the jury heard expert testimony regarding the standard of care applicable to emergency medicine and family practice physicians. The jury also heard expert testimony regarding aneurysms and subarachnoid hemorrhage. All of the expert witnesses testified the classical symptom of subarachnoid hemorrhage is a sudden severe crashing headache unlike any the patient has ever experienced before, accompanied by vomiting, nuchal rigidity,[3] and/or loss of consciousness. However, all of the expert witnesses further testified that without the classical headache and accompanying symptoms, a diagnosis of subarachnoid hemorrhage would be extremely difficult to make.
Plaintiff Priscilla Engolia testified her daughter presented to the emergency room with a history of severe headache, vomiting, pain radiating down her back, and dizziness, all of which began while she was exercising. Engolia's boyfriend, Greg Ferris, testified he had seen evidence that she had vomited on the floor in her bedroom, apparently while she was attempting to make her way to the bathroom. He also testified he heard Priscilla Engolia tell defendant that Engolia had vomited and that it hurt every time she tried to move her neck.
Janice Borrowdale, an emergency room nurse who initially saw Engolia, testified Engolia presented to the emergency room only with a history of neck pain radiating down her spine. She stated Engolia was wearing an exercise suit and explained to her (Borrowdale) that she had been exercising when the problem began. She further testified that she specifically asked Engolia whether she felt nauseated, and that the response was negative.
Defendant also testified that Engolia presented to him with a history of severe neck pain only, which began while she was exercising. He stated that he asked her where and how she was hurting, but did not get any history of a crashing headache. He also stated that he observed Engolia moving her neck to some degree, but that she refused any active range of motion upon request because it was too tender.
Our review of the record convinces us there was no dispute as to the standard of care itself, but rather whether defendant met the standard of care in his treatment of Engolia. We are further convinced that the question as to whether defendant's treatment was below the standard of care turned solely upon the findings of fact by the jury. Under the fact scenario presented by plaintiffs, defendant committed malpractice; under the fact scenario presented by defendant, he did not.
Dr. Roy Folse, a member of the medical review panel, testified the panel considered the depositions of all the interested parties and the emergency room records in making its decision. Based on what he believed to be the history and presenting symptoms, he opined defendant's failure to consider more than cervical strain was below the standard of care. Likewise, Dr. George Baquet and *728 Dr. Linda Stewart, the two other panel members, testified the panel decision was based upon what they believed to be the presenting symptoms. However, all three panel members admitted at trial that they were presented with two sets of facts and selected one over the other in making their decision. Moreover, all three panel members testified that if Engolia presented without the symptoms of severe headache, nuchal rigidity, and vomiting, there was no breach of the standard of care in defendant's treatment of her.
Louisiana Revised Statute 40:1299.47(G) provides a medical review panel shall have the sole duty to express its expert opinion as to whether the evidence supports the conclusion that the defendant acted or failed to act within the appropriate standards of care. However, where the evaluation of whether a defendant acted within the appropriate standards of care depends on material issues of fact, not requiring expert opinion, a medical review panel is to leave the factual evaluation for consideration by the court.[4]
The medical review panel considered the facts as presented by plaintiffs in making its decision notwithstanding LSA-R.S. 40:1299.47(G). The jury made a credibility and factual determination in defendant's favor. It is well settled that a court of appeal may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La. 1989). Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 883 (La.1993). We conclude the jury was presented with two permissible views concerning whether defendant's treatment was substandard and its findings were not manifestly erroneous or clearly wrong.

JNOV/NEW TRIAL
Plaintiffs contend the trial court erred in failing to grant their motion for judgment notwithstanding the verdict (JNOV) and alternatively, for a new trial. Because these two motions are governed by different standards, we will consider each separately.
Louisiana Code of Civil Procedure article 1811 is the statutory authority for a motion for a JNOV. However, the standards to be applied by the trial judge in determining the propriety of such a motion have been developed jurisprudentially. A trial court may grant a JNOV only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not reach a contrary verdict. If there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion must be denied. In considering a motion for JNOV, the trial court must construe all evidence and reasonable inferences to be made therefrom in favor of the party opposing the motion. Further, the trial court may not weigh the evidence, pass on the credibility of witnesses, or substitute its own judgment for that of the jury. A JNOV can be granted by a trial court only when a jury's verdict is one which reasonable jurors could not have rendered. Miley v. Louisiana Farm Bureau Cas. Ins. Co., 599 So.2d 791 (La.App. 1st Cir.), writ denied, 604 So.2d 1313 (La.1992); Petitto v. McMichael, 588 So.2d 1144 (La.App. 1st Cir.1991), writ denied, 590 So.2d 1201 (La.1992); see also Gibson v. Bossier City Gen. Hosp., 594 So.2d 1332 (La.App. 2d Cir.1991).
*729 The record reflects the trial court correctly applied the above standards in considering the plaintiffs' motion for JNOV and did not find the evidence pointed so strongly in favor of the plaintiffs that reasonable jurors could not reach a different conclusion. Accordingly, we find the trial court did not commit manifest error in its denial of the plaintiffs' motion for JNOV.
With regard to the denial of their motion for a new trial, plaintiffs contend the trial court erred because the jury verdict was contrary to the law and evidence. However, the law is clear that the granting or denying of a motion for new trial rests within the wide discretion of the trial court and its determination shall not be disturbed absent a clear abuse of that discretion. Pinion v. Louisiana Farm Bureau, 590 So.2d 1230, 1234 (La.App. 1st Cir.1991), writ denied, 592 So.2d 1301 (La.1992); Gibson v. Bossier City Gen. Hosp. 594 So.2d at 1336. Furthermore, the discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence. Gibson v. Bossier City Gen. Hosp., 594 So.2d at 1336.
After a thorough review of the record, we find no abuse of discretion by the trial court in denying the motion for a new trial.
For these reasons, the judgment of the trial court in favor of defendant is affirmed at plaintiffs' costs.
AFFIRMED.
NOTES
[1] Plaintiffs also named Our Lady of the Lake Regional Medical Center and Dr. Susan Richarme as defendants in their original petition. However, these defendants were voluntarily dismissed prior to trial.
[2] We also note plaintiffs' counsel failed to object to the jury charge at trial as mandated by Louisiana Civil Code of Procedure article 1793(C).
[3] Nuchal rigidity is the inability to move the head because of some pathology in the brain, like meningitis.
[4] LSA-R.S. 40:1299.47(G) provides a medical review panel shall render one or more of the following expert opinions:

(1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.
(2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.
(3) That there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court.
(Emphasis ours.)