673 So.2d 1249 (1996)
STATE of Louisiana DEPARTMENT OF TRANSPORTATION & DEVELOPMENT
v.
Alfred SCRAMUZZA, et al.
Nos. 95-CA-786 to 95-CA-796.
Court of Appeal of Louisiana, Fifth Circuit.
April 30, 1996.
Rehearing Denied June 12, 1996.
*1252 Mack E. Barham, Robert E. Arceneaux, Travis L. Bourgeois and Jerry Jordan, Barham & Arceneaux, New Orleans, for Defendants/Appellees, Alfred Scramuzza, et al.
Thomas Lee, Harahan, for Defendant/Appellee.
Ronald J. Bertrand, Bertrand & Soileau, Rayne, for Plaintiff/Appellant, State of Louisiana, DOTD.
Before GRISBAUM and GOTHARD, JJ., and REMY CHIASSON, J., Pro Tem.
REMY CHIASSON, Judge, Pro Tem.
The State of Louisiana, Department of Transportation and Development (DOTD), appeals judgments rendered May 31, 1995, in consolidated expropriation suits. We reverse.
The present appeal is the second time that this court has reviewed the merits of this case. The procedural history begins in 1988, when DOTD filed eleven suits to expropriate certain properties, located in St. Charles Parish, for construction of a highway interchange at Airline Highway (US 61) *1253 and Interstate 310. The defendants, property owners in the respective cases, are Alfred Scramuzza (parcels 17-5 and 17-9), Patricia and Margaret Terranova (parcel 16-28), John M. Key et al (parcel 17-13), Floyd H. and Christine Putnam (parcel 17-15), Rumold and LaFranca et al (parcel 17-7), Louis P. Martin (parcel 17-3), Kwong Yet Lee and Henry Lee (parcel 17-8), Louis L. Babin, Jr. et al (parcel 17-10), Robert J. Doskey individually and d/b/a American Land and Development Co. (parcel 17-16), and Larsen[1] Motor Lines, Inc. (parcel 17-4) (hereinafter collectively referred to as Landowners). The properties are located in an area known as the Old Kenner Landfill and are part of the Beltway Industrial Park and the Econo Park Subdivision, "paper" subdivisions approved by St. Charles Parish in 1969 but never developed. All of the subject properties lie north of Airline Highway (U.S. 61). The subdivisions consist of unimproved lots of various sizes. The only parcel with frontage on Airline Highway belongs to Larsen Motor Lines Inc. (Larsen), and that frontage is separated from direct access to the highway by a borrow pit or ditch 100' wide. No streets were ever constructed and the sole access is over a bridge and dirt road built for the landfill purposes. At the rear was a shooting range, which was used by the Kenner and local police departments.
The first jury trial was held on December 4 and 5, 1989, to establish values for the land taken and severance damages. The jury returned a verdict awarding compensation of $0.38 per square foot to each landowner, except Larsen, which received $0.86 per square foot, and certain severance damages. These valuations were identical to the values given the land by DOTD's expert appraiser, Mr. Jack Evans.
The Landowners filed a Motion for Judgment Notwithstanding the Verdict (JNOV), Alternative New Trial, or Alternative Additur. On September 21, 1990, the district judge granted the Motion for JNOV, increasing the compensation for the land taken to $2.23 per square foot for Larsen and to $1.75 per square foot for all other landowners, and awarded attorneys' fees of $50,000.00. The severance damages awarded by the jury were allowed to remain.
Next, the landowners filed a Motion for JNOV, Alternative New Trial or Alternative Additur regarding the award of attorneys' fees. After a hearing, the district judge increased the attorneys' fees to $125,000.00.
DOTD appealed these judgments to this court; however, this court dismissed the appeal on the grounds that because the trial court had not ruled on the Motion for Alternative New Trial when it granted the Motion for JNOV (as per La.C.C.P. art. 1811(C)), appellate jurisdiction had not attached. State through DOTD v. Scramuzza, 594 So.2d 521 (La.App. 5 Cir.1992). On remand, the district judge adhered to his original judgments of September 21, 1990, made additional awards, and conditionally granted the Motion for New Trial in the event that the judgment on the Motion for JNOV was reversed by this court on appeal. In State through DOTD v. Scramuzza, 608 So.2d 1069 (La.App. 5 Cir.1992), this court reversed the trial court's grant of the Motion for JNOV, on the grounds that the motion had been improperly granted because the jury's verdict tracking DOTD's expert's testimony was supported by the evidence. This court found that for the district judge to have reached his decision, wherein he opined that DOTD's expert's testimony was "legally" insufficient, he had to pass on the credibility of the witnesses and weigh the evidence, which is prohibited in the determination of a Motion for JNOV. This court further found that the evidence presented in that first trial was "legally" sufficient so as to constitute a preponderance of the evidence. Id. at 1076. This court also reversed the trial court's grant of the conditional new trial.
In State through DOTD v. Scramuzza, 610 So.2d 809 (La.1993), the Supreme Court said:
"The judgment of the court of appeal is reversed insofar as it reverses the district court's judgment granting defendants a conditional new trial. The judgment of the district court granting a new trial is reinstated. *1254 Otherwise, the application is denied. Case remanded to the district court for further proceedings."
A second jury trial was held on August 1-4, 1994. Before trial, the Landowners filed numerous Motions in Limine seeking to limit and/or exclude altogether the testimony of DOTD's expert appraisal witnesses. The trial court granted these motions, which were then reversed by this court pursuant to writ applications filed by DOTD. The Landowners presented the expert testimony of two new appraisers, Mr. Frederick Guice and Ms. Jean Felts, and DOTD also presented expert testimony by two appraisers, one being the same appraiser from the first trial, Jack Evans, and Byron Core. In this trial, the Landowners claimed delay damages, an element of damages not previously claimed. The jury returned verdicts for the landowners which again closely tracked DOTD's appraiser Jack Evans's values, but were in some cases slightly higher. The second jury awarded no severance damages or delay damages, but did award the Landowners damages for the value of streets taken within each parcel. These verdicts were entered into judgment on October 28, 1994.
The Landowners filed Motions for JNOV, Alternative New Trial, Alternative Additur and Order on November 7, 1994. The trial court granted the Motions for JNOV, publishing a thirty page written Reasons for Judgment which again castigated the DOTD's appraiser's expert testimony as being without legal sufficiency and being entitled to no weight. The court increased each landowner's compensation, awarded delay damages, and attorneys' fees.
On appeal, DOTD raises these issues for our review:
1. The trial judge erred in setting aside the jury verdict and rendering a JNOV on the issue of the value of the expropriated property;
2. The trial judge similarly erred in granting a JNOV on the issue of delay damages;
3. The trial judge erred in holding that the dedicated streets had been abandoned and therefore had reverted back to the landowners' ownership. Both the jury award for this item and the increased JNOV amount for this item have no legal basis;
4. The trial judge erred in granting a conditional new trial;
5. The attorneys' fees and expert witness fees awarded by the judge are excessive and should be reduced.
In this Court's previous opinion (608 So.2d 1069), we discussed the law relating to Motions for Judgments Notwithstanding the Verdict as follows:
"At the outset, it is important to acknowledge the different positions of the trier of fact, the jury, and the district court. Each had a specific standard to apply and burden of proof to consider concerning the verdict and judgment which they rendered. When facing a verdict after trial, the trier of fact, the jury, must consider the standard of "the preponderance of the evidence." When a party has proven his case to that standard, he is entitled to prevail. When facing a Motion for JNOV, the district judge must consider the standard of "reasonable men could not arrive at a contrary verdict." When mover has convinced the district judge that this standard was met, the motion should be granted. If the motion was granted based on the district judge's evaluation of the evidence and credibility of the witnesses, then it was improperly granted and should be reversed."
* * * * * *
"A JNOV is properly granted "only when the facts and inferences are so strongly and overwhelmingly in favor of one party that the trial judge believes reasonable men could not have arrived at a contrary verdict." Adams v. Security Ins. Co. of Hartford, 543 So.2d 480, 486 (La.1989). Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991).
"A JNOV is based on a different standard from additur and remittur, namely, that based on the evidence there is no genuine issue of fact." Trans Global Alloy v. First Nat. Bank, 564 So.2d 697, 710 (La.App. 5th Cir.1990), affirmed in part, rev'd in part *1255 on other grounds, 583 So.2d 443 (La.1991); LSA-C.C.P. art. 1811, Comments1984. Thus, if the jury's verdict is one which reasonable people could have rendered or if the trial court is convinced that, under the evidence, reasonable minds could differ as to the amount of damages, the granting of a JNOV is improper. (Cites omitted) In considering a motion for JNOV, the trial court may not weigh the evidence, substitute its judgment of facts for that of the jury, or pass on the credibility of witnesses. (Cites omitted.) Furthermore, the court should consider all of the evidence, not just the evidence that supports the non-mover's case, and should give the non-mover the benefit of every legitimate and reasonable inference that can be drawn from the evidence by the jury. Department of Transp. and Dev. v. Wahlder, 554 So.2d 233 (La.App. 3rd Cir.1989); McClain v. Holmes, 460 So.2d 681 (La. App. 1st Cir.1984).
This court, in reviewing a JNOV, must use the aforementioned criteria in deciding whether or not the motion was properly granted. Anderson v. New Orleans Public Service, supra. If the reviewing court determines that the trial court erred in granting the motion, because reasonable men in the exercise of impartial judgment might reach a different conclusion than the one proposed by the moving party, then the JNOV must be reversed and the jury verdict should be reinstated. Anderson v. New Orleans Public Service, supra.

When a landowner challenges the amount DOTD deposits for compensation for expropriated land, the landowner must prove the greater value by a preponderance of the evidence. State, DOTD v. Dietrich, 555 So.2d 1355 (La.1990). The question of what damages will appropriately compensate the landowner is one of fact. State v. Tramuta, 101 So.2d 450 (La.1958); State, Dept. Of Transp. v. Boyce Gin Co-Op, 397 So.2d 1087 (La.App. 3rd Cir.1981). Such determination is necessarily dependant on evidence presented by expert witnesses. State, Dept. Of Transp. v. Boyce Gin Co-Op, id. However, the fact finder is not obligated to accept an expert's opinion in expropriation cases, since those opinions are not binding and are merely advisory in nature. State, Through DOTD v. Estate of Davis, 560 So.2d 566 (La.App. 5th Cir. 1990), affirmed in part, amended in part, and reversed in part and remanded, 572 So.2d 39 (La.1990); State Dept. Of Transp. & Dev. v. Stumpf, 519 So.2d 279 (La.App. 5th Cir.1988), writ denied, 520 So.2d 753 (La.1988).
Market value of the property is the general measure of compensation, according to its highest and best use. State v. Keller, 520 So.2d 1242 (La.App. 5th Cir.1988). The use of comparable sales is one of the tools to be used in making the determination; however, it is not the sole determining factor. State v. Keller, supra; State, Through DOTD v. Estate of Davis, supra.

Much discretion is afforded the trier of fact in evaluating property in expropriation cases. State, Through DOTD v. Estate of Davis, 572 So.2d 39 (La.1990). The evaluation of and weight given to the experts' testimony will not be disturbed on appeal in the absence of manifest error. Id.

In a JNOV the trial judge is entitled to evaluate the sufficiency of the evidence, since that is a legal question. See Carter v. Avondale Shipyards, Inc., 415 So.2d 174 (La.1981); Barriffe v. Ortiz, 476 So.2d 371 (La.App. 4th Cir.1985); Hebert v. Lake Charles American Press, 427 So.2d 916 (La.App. 3rd Cir.1983). The sufficiency of the evidence analysis relates to the question of the preponderance of the evidence. "The evidence is sufficient to constitute a preponderance when the proof, taken as a whole, establishes that the fact ... sought to be proved is more probable than not." Carter v. Avondale Shipyards, Inc., supra, at 175. However, there exists no legal authority for discounting the testimony of a witness because the testimony is "legally unacceptable". It may be factually impeachable or incredible, but where it is as here, advisory in nature, it must be weighed along with the other evidence. The weight to be given the testimony is for the trier of fact, the jury, to determine. (Emphasis supplied.)

State, DOTD v. Scramuzza, at 1075-76.
*1256 In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting it, using the same criteria as the trial court did, i.e., whether facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict; if the answer is affirmative, then the trial court was correct in granting the motion, while the trial court was incorrect if reasonable persons in the exercise of impartial judgment might reach a different conclusion. Batiste v. New Hampshire Insurance Co., 94-1467 (La.App. 3 Cir. 5/3/95), 657 So.2d 168; Clayton v. State, DOTD, 599 So.2d 394 (La.App. 5 Cir.1992).
After reading the record and the trial judge's Written Reasons for Judgment, this court finds the trial judge exceeded his permissible judicial authority in granting the motion for JNOV. It is apparent that the trial judge assessed the credibility of witnesses and determined the weight to be given testimony, in particular of DOTD's appraiser Jack Evans. On pages 6-8 of his Reasons for Judgment, the trial judge analyzes Evans's testimony and concludes that it is worth no weight. In doing so, the Court quotes its previous written reasons for JNOV that it rendered after the first jury trial. This first analysis is pertinent because the court recognizes that Evans's testimony is substantially the same in the second trial as it was in the first. The Court's analysis is as follows:
"Evans' appraisal is legally unacceptable because the majority of the "comparable sales" that he used are simply too old to give an accurate valuation for the property at issue."
* * * * * *
Therefore, this Court finds that the majority of the 27 "comparable" sales used by Mr. Evans were not comparable at all because they were too old to provide an accurate valuation of the Landowners' property.
* * * * * *
This Court finds that Mr. Evans' original use of the 27 "comparables" significantly flawed his entire appraisal of the Landowners' property. In addition, the averaging of properties on a "unit" basis with no concern whatsoever for the differences among either the "comparables" or any of the 11 subject properties, and the plugging in of these averages into mathematical formulas to establish ratios of unit value, is not a proper appraisal process.
* * * * * *
Therefore, this Court finds that the jury verdict awarding the Landowners 0.38 cents and 0.86 cents per square foot is not supported by any substantial evidence since the only basis for this award is the opinion testimony of Evans, which this Court finds to be legally unacceptable and not entitled to any weight."
The trial judge notes that there is now "contrary evidence (to Evans' testimony) in the record; evidence that far outweighs Evans' probatively worthless ruminations and lecturings." This statement clearly shows that the trial judge strayed from the narrow confines within which he is allowed to consider the Motion for a JNOV.
In another instance in his Reasons for Judgment, the trial judge finds that this court was "forced" to accept Evans's appraisal (in the first appeal) as legally sufficient and states: "The Supreme Court obviously found to the contrary and would not and could not accept Evans' methodology or opinion and ordered a new trial in order that sufficient evidence would be presented to this Court whereby a jury or the Court could find the actual value of the properties based upon valid expert testimony." However, the Supreme Court's opinion, which we have quoted above, contains no analysis or other statements that support this conclusion of the trial judge.
We have stated above that the law is well established that juries are not bound by expert opinion evidence, that all such testimony is advisory and nonbinding in nature. The jury was not bound to have picked one of the four appraisers' valuations. They were free to use them all as advisory opinions and fashion values entirely of their own. This jury obviously was able to see and understand that appraisal of land is not an exact *1257 science. Four appraisers testified, and three of them (Guice, Felts, and Evans) used the comparable sales method in evaluating the subject properties (Core did not, as he felt there were no comparable properties, open landfills subject to closure orders). The comparable sales method has been found to be highly reliable and approved for determining the fair market value of immovable property. This method involves starting with the sales prices of comparable pieces of property, then adjusting them to compensate for their good and bad features with regard to the subject property. State, DOTD v. Estate of Bickham, 93-1664 (La.App. 1 Cir. 6/24/94), 640 So.2d 841. In the instant case, some factors all three experts considered in the adjustment analysis were frontage on main roads, elevations, presence of infrastructure (utilities, roads, etc.), size and shape of the parcels, and proximity to developed properties.
After reading Evans's testimony, this court concludes that the trial judge has either misunderstood or mischaracterized Evans's testimony. Evans used recent comparables, many of them the same that the Landowners' experts[2] used. The comparables the judge speaks of were not used by Evans as true comparables, but were used in Evans's adjustment analysis to develop a time line analysis of the market in that area both north and south of Airline Highway, and then to compare the relative values of those properties. Evans explained his method as "market measured adjustment." He found that by developing a time line of sales in the area, the market had remained relatively flat during the entire 1980s; in other words, land values were not increasing. Second, most of the development in the area was on parcels south of Airline, not north, where the subject properties lay. Development was also taking place closer to the Jefferson Parish line than the subject properties, because plenty of available land still existed in that area. The sales that the judge claims Evans used as straight comparables, he used as one factor in his adjustment analysis. Thus, the trial judge's evaluation of Evans's methodology is simply not correct.
The judge also says that Evans testified as to sales that the judge ruled inadmissible, yet Evans managed to "sneak" in these appraisals before the jury. However, Landowners' counsel objected too late, after the jury had already heard the information. Further, when allowed to explain, Evans stated that he did use these sales in his appraisal report. The judge said that Evans would be allowed to testify as to all sales that he had used in his report, and as he did use the objected-to sales, there was no "sneaking" by him; these sales were properly before the jury.
The judge also points to a statement by Evans in his report that rezoning of the subject land to less restrictive zoning classification, commercial or industrial, was probable (from its present zoning of wetlands), to contradict his statement at trial that he considered the land's highest and best use to be speculative investment and recreation. The judge obviously took these statements as deliberately deceptive. However, we note that Evans's opinion that the land could be rezoned is merely his opinion. Rezoning is done through application to the St. Charles Parish Council, of which Evans is not a member. His testimony also briefly touched on Section 404 permits[3], a federal requirement which mandates a landowner apply for and receive this permit before he can develop lands determined to be wetlands under federal criteria, regardless of parish zoning classification. Therefore, Evans's two statements are not contradictory nor deceptive. Probable rezoning does not end the inquiry into whether a piece of land can be developed, as the 404 permit is required in addition *1258 to any rezoning grants, if any parts of the land are determined to be wetlands[4].
We reiterate our statement from our previous opinion that there is no legal precedent for finding an expert's opinion to be "legally unacceptable," and nor do we find Evans's testimony to be so. We also find that Evans's testimony is not so flawed as to be worth no weight. While Evans considered many more factors in his adjustment analysis than did the two Landowners' appraisers, their methodologies were essentially similar.
After analyzing the judge's view of Evans's testimony, it is apparent that the court weighed the evidence, improperly gave Evans's testimony no weight, and substituted its own evaluations for those of the jury, actions which this court has determined to be outside of the court's permissible scope of review in ruling on a JNOV. After thorough review of the record and exhibits, we do not find that the evidence so strongly and overwhelmingly pointed to only one verdict, or that the jury verdict was so unreasonable that reasonable men could have only reached the trial judge's conclusions. In light of these findings, we hereby reinstate the jury's verdict.
Next, the DOTD contends that the trial judge erred in granting the Motion for JNOV on the issue of delay damages. Delay damages are compensable damages for property taken out of commerce for an unreasonable length of time pending expropriation or completion of the project. LSA-R.S. 38:281(4), 38:387, subds. A-C; West Jefferson Levee District v. Coast Quality Const. Corp., 620 So.2d 319 (La.App. 5 Cir.1993), reversed on other grounds, 640 So.2d 1258 (La.1994). The property owner has the burden of proving delay damages by a preponderance of the evidence. State, DOTD v. McMillion Dozer Service, Inc., 93-590 (La.App. 5 Cir. 5/31/94) 639 So.2d 766.
The jury did not award any landowner delay damages. Several witnesses testified regarding a February 3, 1984 letter from DOTD to the Corps of Engineers, stating that following the building of the subject interchange, no access to 1-310 would be permitted other than the interchanges at River Road (La. 48) and Airline Highway (U.S. 61), and no access to Airline highway would be permitted between La. 626 and Almedia Road. However, it was admitted that no landowner ever saw this letter or was aware of the prohibition[5]. Further, the DOTD introduced into evidence a copy of a lawsuit filed by the Landowners in 1988, shortly before the expropriations began, against the City of Kenner, claiming that Kenner had locked them out of their land and prevented their access and use. The jury apparently did not find that the DOTD letter took the properties out of commerce, and was able to see that the Landowners themselves felt that another entity, the City of Kenner, was responsible for keeping them off the property. Because we believe that the jury's finding of fact was reasonable and supported by the evidence, we reverse the trial court's grant of the Motion for JNOV regarding delay damages, and reinstate the jury verdict.
Next, DOTD argues that both the jury verdict and the trial court's JNOV erred in finding that the dedicated streets had been "abandoned" by the parish and/or had reverted back to the Landowners' ownership, and thus both erred in awarding the Landowners compensation for the land represented by the streets. The streets, which remained unbuilt, were dedicated to the Parish when the respective subdivision plats were filed in the late 1960s. It appears that St. Charles Parish never formally declared the streets unneeded for public purposes[6]. The sole legal issue appears to be whether LSA-R.S. 48:701 requires a formal revocation of streets before *1259 there is an abandonment and the streets revert to the adjoining landowners.
When property is formally dedicated to the public, actual use by the public is unnecessary and the dedication becomes complete upon the recordation of the map containing the descriptions of the streets; the effect of formal dedication is to divest the owner of title and vest it in the political subdivision. Property so dedicated becomes public property. Walker v. Coleman, 540 So.2d 983 (La.App. 2 Cir.1989). Regardless of use or improvement, the streets are public things until the political subdivision determines that they are no longer needed for public purposes. Id.
Abandonment of a public road may be evidenced by (1) a formal act of revocation in accordance with LSA-R.S. 48:701; (2) relocation of the public road by the governing body; or (3) clear and well established proof of intent by the governing body to abandon. IP Timberlands Operating Co. v. DeSoto Parish Police Jury, 552 So.2d 605 (La.App. 2 Cir.1989). Nonuse of a strip of land as a public road or a street for a period in excess of ten years may also result in termination of public use. Robinson v. Beauregard Parish Police Jury, 351 So.2d 113 (La.1977).
LSA-R.S. 48:701[7] says nothing about requiring a formal revocation. The court in American Sec. Bank of Ville Platte v. Rebokus, 527 So.2d 71 (La.App. 3 Cir.1988) held that the statute required neither the execution of a notarial act nor the recordation of the abandonment. "The sole requirement of the statute ... to effect the abandonment of the street or alley in question was that it be abandoned in fact or no longer needed for public purposes (emphasis ours) (citing Bulliard v. Delahoussaye, 481 So.2d 747 (La. App. 3 Cir.1985). In Walker v. Coleman, this issue was not reached, as the governing authority had formally revoked the alley's dedication. However, like in the instant case, the Walker alley existed on paper only; it had not been opened or improved. See also Miller v. Calcasieu Parish Police Jury, 441 So.2d 306 (La.App. 3 Cir.1983) (the trial court found that the street had never been constructed or maintained as a public road; hence, it did not, nor had it ever, served a public purpose).
The governing body to whom the streets were dedicated, St. Charles Parish, is not the expropriating authority: the State through DOTD is, and thus we cannot attribute the State's action as evidence of St. Charles Parish's intent to abandon the roads. However, the statute's last criterion, that the road is no longer needed for public purposes, does not contain a requirement that the governing authority formally declare it so. These paper streets never served a public purpose. The streets had been dedicated for almost 30 years (since the late 1960s), and in that time the parish had never taken any action to actually build the streets. Thus, it would seem that the statutory requirement has been met. Under the instant factual circumstances, we find that the streets have reverted to the contiguous landowners, and reimbursement to the landowners at the same rate as the surrounding land is proper.
DOTD contends that the trial court erred in conditionally granting the Motion for New Trial. LSA-C.C.P. art. 1811(C)(1) authorizes the trial court to conditionally grant the mover a new trial when the court has granted the mover's Motion for JNOV.[8] Now, following the second jury trial, second grant of the JNOVs, and second grant of a conditional new trial, we again must determine if the *1260 trial judge erred in granting the conditional new trial.
LSA-C.C.P. arts. 1972 and 1973 govern when the court may grant the Motion for New Trial:
Art. 1972. Peremptory grounds
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
Art. 1973. Discretionary grounds
A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.
In the trial judge's Reasons for Judgment, he grants the conditional new trial under both the peremptory and discretionary grounds provided above. Granting or denying a motion for new trial rests within the wide discretion of the trial court and its determination shall not be disturbed absent an abuse of that discretion. Engolia v. Allain, 625 So.2d 723 (La.App. 1 Cir.1993). A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence. Engolia v. Allain, supra, at 729.
In reversing the JNOV, we have already determined that the facts and inferences did not point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. However, we now apply a different standard. The Motion for New Trial requires a less stringent test than for a JNOV in that such determinations involve only a new trial and do not deprive the parties of their right to have all disputed issues resolved by a jury. Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d 466 (La. App. 1 Cir.1994). On a motion for new trial, the trial judge is free to evaluate evidence without favoring either party; he may draw his own inferences and conclusions and may evaluate the credibility of witnesses to determine if the jury has erred in giving too much credence to an unreliable witness[9]. Smith v. American Indem. Ins. Co., 598 So.2d 486 (La.App. 2 Cir.1992), writ denied 600 So.2d 685 (La.1992); Morgan v. Belanger, 633 So.2d 173 (La.App. 1 Cir.1993), writ denied 634 So.2d 832 (La.1994).
In the trial judge's reasons for judgment, he says the following:
"If a new trial was due after the first trial of this case, where the Landowners failed to present any credible evidence in support of their claim, a new trial is, at a minimum, due now, where the Landowners offered solid, credible, and preponderate evidence to support the State's grossly inadequate estimate of just compensation. The State's case did not changeEvans was the key in trial one; Evans was the key in trial two. If he was inadequate in trial one (a holding made by this Court and affirmed by the Supreme Court), he was inadequate in trial two. Any other holding would allow an inequitable or unconscionable judgment to stand, which is what the motion for new trial is designed to prevent [cite omitted]." (Emphasis ours)
P. 21, reasons for judgment, May 31, 1995.
We do not agree with the statement that the Supreme Court affirmed any holding that Evans was an inadequate witness. We have already opined that the trial judge misunderstood Evans's testimony. Therefore, absent any legal impediment to the sufficiency of Evans's testimony, the evaluation of and weight given to the experts' testimony by the trier of fact will not be disturbed on appeal in the absence of manifest error. State, Through DOTD v. Estate of Davis, supra. *1261 Article 1972 requires a jury verdict to be clearly contrary to the law and evidence. When this word is used in other contexts, such as in the burden of proof "clear and convincing," it means something stronger than preponderate, which is the term employed by the trial judge.
We have already determined that Evans was not an "unreliable" witness. Because of our previous assessment of Evans's testimony as sound, which formed the chief basis for both the jury verdict and the trial court's overturning of it, we find that the trial judge was clearly wrong in his grant of a new trial. The jury heard the testimony of four expert witnesses whose opinions were all advisory and nonbinding upon the jury. The jury had the power to weigh each opinion and fashion its verdict, following one or none of the testimonies[10]. Because we find that the trial judge was clearly wrong in the weight he gave to Evans's testimony, and also clearly wrong in the assessment of Evans's credibility, we find that the trial judge clearly erred in invoking the peremptory grounds of LSA-C.C.P. art. 1972 in granting Landowners' Motion for New Trial.
The trial judge also invoked the discretionary grounds in Art. 1973. Jurisprudentially, a new trial should be ordered when the trial judge, exercising his or her discretion, is convinced by his or her examination of the facts that the judgment would result in a miscarriage of justice. Lamb v. Lamb, 430 So.2d 51 (La.1983); Tudela v. Broussard, 581 So.2d 1068 (La.App. 5 Cir. 1991). The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. Engolia v. Allain, supra, at 729.
We must note that not one but two juries have returned verdicts that almost identically tracked the values stated by Evans. In the first trial, the Landowners' expert was found to be without legal effect because he was not a real estate appraiser. However, in the second trial, the jury had four competent experts' opinions from which to fashion their verdict, and again, they have chosen values close to Evans's for compensation. It is apparent to this court that the trial judge simply disagrees with the compensation awarded by the jury. Considering the law and the entirety of the evidence presented, we find that the judge clearly abused his discretion in granting the motion for new trial.
Last, DOTD appeals the awards of attorneys' fees and experts' fees. The Supreme Court in State, DOTD v. Williamson, 597 So.2d 439 (La.1992) said:
"Attorney fees in expropriation cases are discretionary with the trial court. (Cite omitted.) Courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. (Cites omitted.) LSA-R.S. 48:453(E) provides that reasonable attorney fees may be awarded by the court but in no event shall exceed 25% of the difference between the award and the amount deposited in the registry of the court. Factors to be taken into consideration in determining the reasonableness of attorney fees include: 1) the ultimate result obtained; 2) the responsibility incurred; 3) the importance of the litigation; 4) the amount of money involved; 5) extent and character of the work performed; 6) legal knowledge, attainment, and skill of the attorneys; 7) number of appearances made; 8) intricacies of the facts involved; 9) diligence and skill of counsel; and 10) the court's own knowledge. (Cites omitted.)

Williamson at 441-42.
*1262 The jury verdicts award 25% attorneys' fees of the net award (the difference between the jury verdict and the amount deposited into the record, plus interest thereon). This award is the maximum allowed by statute, and considering all of the above factors, we find no abuse of the trial court's discretion in making this award.
The JNOVs do not make any mention of expert witness fees. The Landowners did not appeal or answer DOTD's appeal. Since today we reinstate the jury verdicts, DOTD on appeal asks us to review those expert fees set in the jury verdicts. DOTD opposes several of the witnesses' fees in their entirety, and also opposes Guice's and Felts' fees as being excessive.
In expropriation proceedings, the condemning authority is taxed with the reasonable costs of the testifying expert witnesses retained by the landowner to assist him in obtaining his just compensation. The fixing of expert witness fees is largely within the sound discretion of the court, and the court's fixing thereof will not be disturbed absent an abuse of discretion. In fixing expert witness fees, each case must turn on its own peculiar facts and circumstances. State, DOTD v. Nelken, 628 So.2d 1279 (La.App. 3 Cir.1993), citing State, DOTD v. Jacob, 491 So.2d 138 (La.App. 3 Cir.1986), writ denied 496 So.2d 331 (La.1986).
DOTD argues against awarding fees to Guice and Felts, on the premise that the jury's awards do not reflect any reliance upon these two appraisers' opinions. Considering that all experts' opinions are advisory, and that a jury is bound by none of them, we cannot say that these two appraisers' opinions were of no value to the jury. In seven parcels of land, the jury awarded more than DOTD and Evans recommended. In all eleven parcels of land, the jury awarded damages for streets taken, completely contrary to DOTD and Evans. The only witnesses whose testimony could have been a basis for these increased compensations are Guice and Felts. Therefore, we agree that an award of expert fees to these two witnesses is warranted.
In the alternative, DOTD argues that these fees are excessive ($34,162.50 to Felts, and $27,388.00 to Guice) because they exceed the amount the jury awarded in the aggregate for compensation above the deposit for the parcels appropriated. From our evaluation of the jury judgments entered by the court, the jury in fact awarded $106,359 over the DOTD deposits. The total award to Guice and Felts is more than half this amount. However, the record shows that these awards are based upon the actual fees and expenses charges by these two appraisers. As such, we affirm these awards.
Zurawel and Oubre were not qualified as experts, but testified as fact witnesses. As such, they are not entitled to expert fees and therefore we reverse these awards. Last, DOTD objects to the fee awarded to witness Bush, who testified regarding the character of the foliage on the subject properties. DOTD objects to this fee because of the stipulation that the jury would determine the character of the land by reference to two aerial photographs of the tracts. However, it is possible that the jury used this witness's testimony as an aid to their determination. In that light, his fee shall be allowed.
Accordingly, for the reasons herein assigned, we set aside the trial judge's grant of Landowners' Motion for JNOV regarding both the compensation due for the land and for delay damages. We reinstate the jury verdicts. We also set aside the trial judge's grant of a conditional new trial. The attorneys fees as found in the jury verdicts are affirmed. The expert witness fees of Guice, Felts and Bush as found in the jury verdicts are affirmed. The expert fees awarded to Zurawel and Oubre are reversed.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] This defendant's name is alternately spelled Larson and Larsen throughout the record. We will use the latter spelling since defendant's petition spells it this way.
[2] It is important to note that two of the comparable parcels used by Guice, Felts, and Evans, the Exxon Parcel ($2.95 per square foot) and the Vigurie Parcel ($1.60 per square foot), were appraised by Evans for the same DOTD project as in the instant case, and the selling prices (in parentheses) were identical to Evans's appraised values.
[3] The required permit from the Corps to fill and/or dredge a wetland area became known as a "Sec. 404 permit", after the pertinent section of the Clean Water Act, and which is now found in 33 U.S.C. Sec. 1344. West Jefferson Levee District v. Coast Quality Const. Corp, 620 So.2d 319 (La.App. 5 Cir.1993), reversed on other grounds, 640 So.2d 1258 (La.1994).
[4] Both parties stipulated that the jury would determine the character of the parcels, whether it consisted of wetlands or not.
[5] See Rivet v. State, DOTD, 93-369 (La.App. 5 Cir. 3/16/94), 635 So.2d 295, which cites this same letter, and found that a taking did not occur with DOTD's notification of no access to the Corp, but rather a taking occurred at the later date when the landowner was denied a permit for a driveway. In the instant case, there is no evidence in the record that any Landowner applied for any type of building permit and was denied.
[6] See affidavit of Joan Becnel, Secretary for the St. Charles Parish Council.
[7] Sec. 701. Revocation of dedication; reversion of property

The parish governing authorities and municipal corporations of the state, except the parish of Orleans, may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.
Upon such revocation, all of the soil covered by and embraced in the roads, street, or alleyways up to the center line thereof, shall revert to the then present owner or owners of the land contiguous thereto.
Nothing in this Section shall be construed as repealing any of the provisions of special statutes or charters of incorporated municipalities granting the right to close or alter roads or streets.
[8] LSA R.S. 13:4160 prohibits a trial judge from setting aside three jury verdicts in the same case.
[9] In Morgan, the "unreliable" witnesses were two fact witnesses, the treating and the examining physicians. In Smith, it is impossible to determine the type of witness.
[10] In a footnote in his Reasons for Judgment, the trial court says: "In those instances where the verdict varied from the Evans' testimony, no evidence can be found to support the variance. As a result, the jury based its verdict either on legally insufficient opinion evidence, no evidence at all or prejudice." This statement is clearly contrary to the law regarding the advisory nature of expert opinion evidence. Juries may even mix and match parts of several expert opinions. State, DOTD. v. Schwegmann Westside Expressway, 94-0472 (La.App. 4 Cir. 1/31/95), 651 So.2d 1359.